MUNDT VS. SHEBOYGAN & FOND DU LAC RAILROAD COMPANY.

STATUTES: *Construction of.* (1) *Interpretation, when allowed.* (2, 3, 7) *Construction of statute giving laborers claim against railway.* (5) *Title of statute, when considered.* (6) *Omission of word in revision, effect of.*
RAILROADS: (2, 3, 5, 7) *Construction of statute giving laborers claim against railroad company for services.* (8, 9) *What notice by laborer sufficient.*

1. It is only where a statute is capable of two or more meanings, that interpretation or any latitude of construction is allowable.

2. Section 57, Tay. Stats., 1051, provides that whenever any laborer upon any railroad * * shall have a just claim or demand for labor performed on such railroad, against any person being *contractor* on such railroad *with the railroad company*, such railroad company shall be liable to pay such laborer, etc. *Held*, that the words " contractor with the railroad company " do not *necessarily* restrict the remedy to claims against persons who have contracted directly and immediately with the company; but they *may* be understood as describing all persons who, by means of laborers in their employ, prosecute work upon the railroad, under the primary direction and authority of the company, by virtue of any contract which connects them with the company, though indirectly, mediately or remotely.

3. Since the words used *may* be so understood — since the legislature, if it had intended to restrict the remedy to claims against persons contracting *directly* with the railroad company, might easily and in several ways have expressed clearly that restriction — and since the beneficent intent to protect all laborers upon railroads, clearly indicated by the act taken as a whole, would in a great measure be defeated by the narrower interpretation — the language recited must be construed as including subcontractors.

4. Where the construction of a statute is doubtful, its *title* may be considered; and the earlier act of 1855 on the same subject having made railroad companies liable to laborers in the employ of subcontractors, and the present act (passed in 1857) being entitled " an act *further to protect* laborers on railroads," such title is held to favor the liberal construction here adopted.

5. In general, the studied omission of a word in the re-enactment or revision of a statute indicates an intent to restrict or change it operation. But this rule loses its force when the act is wholly recast with a studied regard for brevity, and the language of the new act is susceptible of the same interpretation as the fuller language of the old.

6. The act of 1855 provides expressly for claims against subcontractors. The act of 1857, intended as a substitute for the former, nowhere expressly mentions subcontractors; but as it is expressed throughout in entirely different and more concise language, this court rejects the inference that the legislature designed to exclude claims against subcontractors.

7. A *notice* to the railroad company that plaintiff had a claim against it to a specified amount, for labor in the construction of the road, between specified dates, *held* sufficient, although it did not name the *contractor* by whom plaintiff was employed.

8. The statute requires such notice to be given " within thirty days after such claim or demand shall have accrued." Where it was customary for the laborers upon a road to receive payment on a certain day of each month for the whole of the previous month's work: *Held*, that the claim did not accrue until the usual day of payment, and notice within thirty days thereafter was sufficient.

APPEAL from the Municipal Court of the *City of Ripon.*

The plaintiff, *Mundt,* recovered judgment against the defendant, before a justice of the peace, for labor performed in the construction of defendant's railway, from which judgment defendant appealed to the municipal court. The facts, as stipulated by the parties upon the trial, were, that defendant (a railway company, organized under the laws of this state) let the contract for the construction of a portion of its road to Wells & French, who sub-let a portion thereof to one Redfield, for whom plaintiff worked in the construction of the road until the 23d of November, 1871, when he received from Redfield a statement in writing, showing the amount due him to be $19.07 ; that the regular pay day of Redfield was the 15th of each month, which plaintiff understood at the time of his employment, and that it was understood that no employee was to be paid except on the 15th of each month; that Redfield surrendered his contract on the 18th of December, 1871, at which time he was owing plaintiff $19.07 ; that on the 30th of December, 1871, plaintiff served the following notice on defendant : " *To the Sheboygan & Fond du Lac R. R. Co.:* Please take · notice that the following named persons have claims against the

Sheboygan and Fond du Lac R. R. Co., amounting to the sums set opposite their several names, for work and labor and services rendered on the continuation of said R. R. between the 15th Nov. and the 15th Dec., 1871. August Mundt, $19.07 And they look to said company for their pay. Dated, Ripon, Dec. 27, 1871. HAMILTON & SUTHERLAND, Att'ys for said parties;" and that this action was brought to enforce the claim against Redfield by charging defendant therewith under the lien provided by chapter 79, R. S., entitled "Of Railroads." The statement relative to Redfield's liability was received subject to the objection that he was not a party to the suit, and that plaintiff's claim against him had not been adjudicated; defendant also objected to the time, form and manner of the notice above mentioned. On this state of facts defendant moved a nonsuit, which was denied. The court found for plaintiff; and judgment being entered accordingly, defendant appealed.

*Edward S. Bragg*, for appellant, contended for a reversal of the judgment upon four grounds: first, that the claimant was not an employe of a contractor; second, that the notice was deficient in that it failed to name the contractor against whom the claim existed; third, that the notice was not served within thirty days after the claim accrued; and fourth, that no judgment could be rendered against the company until the rights of the claimant against the contractor were settled. To the point that courts cannot correct supposed errors, omissions or defects in legislation, and that, in the construction of a statute, if the words are free from ambiguity, courts· will not go outside the statute for its interpretation, counsel cited *McCluskey v. Cromwell*, 1 Kern., 601.

*Hamilton & Sutherland*, for respondent, as to the sufficiency of the notice cited *Black v. Ch. & N. W. R. R.*, 18 Wis., 208; *City of La Crosse v. Town of Melrose*, 22 Wis., 459; 2 Barn. & Ad., 431; 4 Bing., 40; 13 Johns., 379; 35 Barb., 573. To the point that the term contractor as employed in the statute is a generic term, including subcontractors, counsel cited 23 Mo.,

111; 24 Mo., 586; *Branin v. Conn. &c. R. R.*, 81 Vt., 214; *McCluskey v. Cromwell*, 1 Kern., 601; *Warner v. H. R. R. R. Co.*, 5 How. Pr. R., 454; *Kent v. New York Cent. R. R.*, 2 Kern., 628. Less regard is to be paid to the letter of a statute than to its policy and intent, and even implication may be called in to aid such intent. Smith on Stat., §§ 515, 518, 701, 710; Pot·ter's Dwarris on Stat., pp. 144, 179, 231 and 237; 1 Barn. & Cress., 123; 1 Ad. & El., 176; *King v. Hale*, Cro. Ca., 330; 6 Cranch, 314, 323; 6 How. (U. S.), 565; *United States v. Freeman*, 3 id., 565. And if any construction leads to an absurd consequence, or renders the statute a nullity, some exception or qualification will be presumed. *Commonwealth v. Kimball*, 24 Pick., 370; 2 M. & W., 471; Potter's Dwarris on Stat., 208, 209. Remedial statutes and statutes affecting the public receive the most liberal and benign interpretation, and "the court will not suffer the object of such a law to be defeated." *Russell v. Wheeler*, Hemp., 3; 15 Johns., 358; 1 Kent's Com., 465; 43 Barb., 200.

Dixon, C. J. The questions in this case relate to the construction of a statute now found as § 57, 1 Tay. Stats., p. 1051, which reads as follows: "Whenever any laborer upon any railroad in this state shall have just claim or demand for labor performed on such railroad, against any person being contractor on such railroad with the railroad company, such railroad company shall be liable to pay such laborer the amount of such claim or demand : *provided*, such laborer shall have given notice to such railroad company within thirty days after such claim or demand shall have accrued, that he has such claim or demand : *provided*, such claim or demand shall have accrued within sixty days prior to the giving of such notice ; such notice shall be given in writing, and shall specify the particular nature and amount of the claim or demand, and shall be delivered to the secretary or chief engineer of such company, or to the engineer in charge of the construction of that portion of the road upon which such labor was performed."

The statute above quoted is a verbatim copy of sec. 1, ch. 27, Laws of 1857, and of sec. 39, ch. 79, R. S. 1858, excepting only that the words, " to the amount of twenty dollars or more," which appear in those sections immediately after the words, "just claim or demand," near the beginning of the section, are omitted; those words having been stricken out by amendment, by ch. 353, Laws of 1860.

The second section of the act, ch. 27, Laws of 1857, in force and occurring as section 40, ch. 79, R. S. 1858 (1 Tay. Stats., 1051, § 58), though since repealed by substitution of another act (see *Burlander v. Railway Co.*, 26 Wis., 76), reads as follows : "No person employed by any railroad company, or by any contractor on any railroad, or who shall be in any manner engaged in the construction, repair, or operation of any railroad, or in any business incident thereto, whose wages are payable periodically, shall be liable to have any sum which may be due to him from such railroad company, or contractor, or other person, for his wages as aforesaid, attached in the hands of the corporation or person from whom the same may be due, by any garnishee process, or other process whatever, unless as much as two months' wages are due to such person."

And further, in order to a proper understanding of the questions presented, it is also necessary that the provisions of the prior statute, entitled " an act for the protection of laborers on railroads," ch. 86, Laws of 1855, should appear. That statute, which was repealed by ch. 27, Laws of 1857, except so far as it extended its provisions to other incorporated companies, was in these words: "All railroad corporations within this state shall be responsible and obligated in law to the laborers on the line or lines of railroads being constructed by said corporations, and are responsible and liable to pay for all labor performed by said laborers severally, upon said road or roads, to the persons performing such labor; and it shall be the duty of said corporations to require of all contractors or subcontractors ample bond or other security, satisfactory to said corporations, conditioned

that all laborers on said road or roads shall be first paid before the estimates due said contractors or subcontractors by said corporations shall be paid by said companies to said contractor or contractors, subcontractor or subcontractors; and for the purposes of this act all the usual remedies by action are given to any and all such laborers against any such corporation. The provisions of this act shall apply to all incorporated companies in this state. No suit shall be maintained under the provisions of this act until such laborer shall have given thirty days notice, in writing, that wages are due him and that the company is required to make payment for such wages so due, stating the amount claimed."

The act of 1857 was entitled "an act further to protect laborers on railroads."

We have thus before us, at a glance of the eye, the begin ning and the end, and also the intermediate changes, of the legislation for the protection of laborers upon railroads, and likewise that upon the kindred topic and part and parcel of the same enactments, namely, the preservation and exemption of the earnings of such laborers from seizure or stoppage by process of law for the collection of debts. Both provisions sprung from the same policy, and were originated and enacted together. Both are parts of the same special system, designed for the protection of that particular class of persons. The act of 1855 was before this court and received a construction in *Streubel v. Mil. & Miss. R. R. Co.*, 12 Wis., 67. The act of 1857 also came incidentally before the court, and was noticed in the same case. There is nothing in that case particularly pertinent to the questions here presented, except the reasoning of the court upon some points which may hereafter be adverted to.

The first and principal question here presented is, whether the words "*with the railroad company*," in the phrase "being contractor on such railroad with the railroad company," are words of limitation and restraint, signifying that the "contractor" must be one who has contracted *directly* or immedi-

ately with the railroad company, or whether they are words of description merely, or used only in the sense that there must exist, between the employer of the laborers and the railroad company, some contract relation, in pursuance of which the employer is prosecuting the work under and with the primary direction and authority of the company, and by virtue of which he is connected with the company as by contract or as being a contractor, not necessarily directly or immediately, but it may be indirectly, mediately or remotely with the company.

It is conceded by the learned counsel for the company, that the word " contractor," when standing alone or unrestrained by the context or by particular words, may mean a subcontractor or any person remotely engaged under contract and doing the work, as well as an original contractor. Such a person is a contractor as well as the original contractor. This has been frequently so decided, and such is the generic or more comprehensive meaning of the word. The question arises, therefore, whether the word as here used is to be taken in its generic sense, or whether it has been restricted as contended for by counsel. And here it seems proper to observe that we differ not at all from counsel as to the rules and principles by which the interpretation of statutes is to be governed. Courts cannot correct supposed errors, omissions or defects in legislation. The office of interpretation is to bring out the sense where the words used are in some manner doubtful, and where these are plain and unambiguous the court cannot depart from the language of the statute. This court has too often of late had occasion to repeat and enforce these rules, to permit them now to be called in question or disregarded. It is only where the intention of the legislature is ambiguously expressed, so as to be fairly capable of two or more meanings, that interpretation or any latitude of construction is allowable. It is only in such cases that the courts are at liberty to accept or act upon what is termed the doctrine of equitable construction. We admit, therefore, that if the language in question is fairly susceptible

of but one construction or meaning, and that the same as con-
tended for by counsel, then the office of interpretation or judi-
cial exposition is gone, and we have nothing to do but to give
effect to the statute in that sense. But we fail to discover that
clearness and certainty in the language, disclosing the intent
upon which counsel insists, and which to his mind may un-
doubtedly appear quite plain. It seems to us, however, and
we think counsel himself must concede, that there is fair and
rational ground for saying that the words in question may have
been used as words of description and not of limitation or re-
striction, and consequently that the legislature may have in-
tended any contractor with the railroad company in the generic
or broad sense above spoken of. If this be so, then it is clear
that the case is one where the intention of the law maker is
ambiguously expressed, so as to be capable of two meanings,
and we are to pass beyond the language of the statute or the
very words themselves, and search out the intent by those legal
rules and principles which are held to govern in such cases.
We are to look to the mischiefs to be remedied and the motives
which led to the enactment, and to consider the whole and
every part of the statute, and the apparent intention derived
from the whole; to consider the subject matter, the effects and
consequences, and the reason, spirit, and policy of the law, and
thus to arrive at the true meaning of the legislature.

If the legislature had intended clearly and beyond doubt the
construction for which the learned counsel contends, it is highly
improbable that they would have employed language which
admits of such latitude of interpretation. It is very probable,
in such case, that they would have confined the remedy of the
laborer within such limits as would have removed all danger of
misinterpretation, which could have been very easily done by
the use of a single additional word. The legislature could
have said *directly* or *immediately* "with the railroad company,"
or the word *original* could have been prefixed or used before
the word "contractor," and no doubt could have remained.

As it is, the language is doubtful, and fairly the subject of double interpretation; and as such we are not only at liberty to, but must receive and consider it, and give to it such application as, within the rules and principles above stated, seems most in accordance with the probable intention of the legislature.

It being settled that the word "contractor" signifies or may signify a subcontractor as well, or any person contracting for the construction of the railroad or of any part of it, with or under the original contractor, the reasoning of this court, or some portions of it, in *Streubel v. Mil. & Miss. R. R. Co., supra,* is not wholly impertinent by way of showing how the subcontractor may, in a general sense at least, and probably in the sense intended by the legislature, be said to be a "contractor with the railroad company." Speaking of the act of 1855, and of the work which had been performed by the laborers upon the railroad while the act was in force, this court said : "After its passage, and while it was in full force, the appellant (the railroad company) carried on the business of constructing its road, and, through the agency of contractors and subcontractors, contracted with and employed laborers for that purpose. The laborers, through the same agency, contracted with the appellant to perform the labor, and, having done so, were entitled to look directly to it for their pay. The appellant, by prosecuting its work, assented to the obligation imposed by law to pay the laborers their wages ; and the laborers, relying upon such assent and obligation, performed their work. In this, as in all other cases where contracts are regulated by law, the parties are presumed to have acted with reference to it, and to have consented to such conditions and duties as it imposed, and to have acquired such rights as it gave. Their acts are to be interpreted by it. The appellant, by letting its contracts and setting in motion the means by which laborers were employed, thereby agreed and promised to pay them. The laborers, by accepting such employment and doing the work,

assented to such agreement and promise.    Upon this point the minds of the parties just as completely and effectually met, constituting a contract, distinct and independent from that which existed between the laborer and his immediate employer, except so far as the price was concerned, as if they had reduced the agreement to writing, and witnessed it by signatures and seals."

The foregoing reasoning, though applied to a somewhat different subject, and resorted to for the purpose of establishing a somewhat different proposition, yet requires no explanation of the manner of applying it here, or how it may be employed for the purpose of showing that, through the agency of the principal or first contractor, a relation of contract or of contractor may be said to have sprung up and existed between the company and a subcontractor in the sense above stated.

We are constrained, therefore, to differ with counsel upon his premises, and that difference has led us to a different conclusion as to the intent and proper construction of the statute. It being a remedial statute and its construction in doubt, we think we are at liberty to construe it liberally for the advancement of the remedy and suppression of the mischief aimed at by the legislature.    We are at liberty to take notice of the consequences which would flow from the construction contended for by counsel, and to consider that such construction would, under the system of sub-letting or sub-contracting which almost invariably prevails in the construction of railroads in this state, practically defeat the benign purpose which the legislature had in view in enacting the statute, and would, at the option of any and of every railroad company, render the statute a dead letter and a nullity upon our statute books.    We are at liberty to consider the generally impoverished, degraded, ignorant and helpless condition of the class of persons whom the legislature designed to protect, and how much they do or may sometimes stand in need of just such legislative assistance. And we are furthermore at liberty to presume, and must pre-

sume, the language of the statute not being inconsistent there-with, that the legislature intended to make the remedy co-extensive with the evil; and whilst we cannot overrule or disregard the plain letter, we nevertheless may, indeed must, modify, shape and apply, or extend or restrict, doubtful expressions in conformity with such presumed intention, and so as to uphold and give effect to it, and to suit and carry out the general policy, purview and beneficent objects of the act.

And here we are reminded of the language of the second section of the act, which prohibits the attachment or seizure of the wages of such laborers by any garnishee process or other process whatever, and which, as it seems to us, serves strongly to elucidate and explain the intention of the legislature, doubtfully expressed and made known in the first section. We speak of course of the act of 1857, where both sections were first introduced, constituting the entire body of the act, and were passed and approved as one law, and both of which have continued in force ever since, with the slight modification of section one above noted, which took place in 1860. The language of section two is, that "no person employed by any railroad company or *by any contractor* on any railroad, or who shall be in any manner engaged in the construction, repair or operation of any railroad," shall be liable to have his wages attached in the hands of the corporation or person from whom the same may be due, by any garnishee process, or other process whatever, unless, etc. It is very clear upon this language, that so far as the exemption of wages from attachment or other legal process was concerned, the legislature did not intend to make any discrimination between laborers such as were employed by a subcontractor and such as were employed by an original one in the construction of a railroad; and yet, if the interpretation contended for be correct, we are bound to suppose that the legislature did intend to make and did make, in the very same act and by the very same breath, that precise distinction between and classification of laborers engaged in the same kind of work with respect to the

protection to be afforded or the security given them for the payment of their wages.   We very well know, and the able effort of counsel in support of such interpretation is in itself a tacit acknowledgment of the same fact, that there existed no good and sufficient reason whatever for the discrimination, or why the legislature should purposely give protection to laborers employed by the principal contractor, and should at the same time purposely withhold like protection from laborers employed by a subcontractor.   We know very well that of the two classes of laborers the latter would be the one most in need of such protection, and the most likely to be benefited by it ; and it is not to be believed that the legislature intended such result except upon clear and positive language demonstrating it.   The intent is certainly not to be inferred from doubtful language of the kind now before us.

In cases of doubtful construction the title of the act may also be referred to for the purpose of aiding in the interpretation.   The act here was entitled an act *further to protect* laborers on railroads.   Counsel notices what he terms this " singular feature " of an act, intended, as he argues, to *restrict* instead of to enlarge the rights of laborers on railroads as given by the act of 1855.   The title aids the interpretation here given.

But another argument supposed very strongly to favor the position of counsel, is that drawn from the omission in the act of 1857 of the word " subcontractor," which occurred so often and was so industriously repeated in the preceding act of 1855. In general, the studied omission of such a word in the re-enactment or revision of a statute would be indicative of an intent to change or restrict its operation.   But the case before us is not a revision or re-enactment with certain modifications and changes of an old statute, but the introduction and passage of an entirely new statute, embracing the same subject matter.   The old statute was wordy, repetitious and awkward, and the phraseology of it, as well as many if not most of its provisions, were

Mundt vs. Sheboygan and Fond du Lac R. R. Co.

rejected and lost sight of in drawing up the new. The new act was expressed in fewer as well as in entirely different words, and conciseness appears to have been an object, although it may have been at a loss, perhaps, of the same degree of clearness and certainty. The new act must, therefore, be construed as if the previous one had not existed, or as if then first incorporated into our law. Upon this subject we quote the language of Chief Justice SHAW in *Harwood v. Lowell*, 4 Cush., 312, where he says: "We should be in danger of doing injustice to the revised statutes, if we did not bear in mind, in construing them, that where a new provision is substituted for an old one in somewhat different terms, *a change of language does not always indicate an intent to change the rule, but to express the same rule in shorter and more comprehensive words.* In this way brevity is sometimes gained, but at some expense of perspicuity."

Another question presented in this case is as to the sufficiency of the notice given the railroad company of the plaintiff's claim. The statute requires that the "notice shall be in writing, and shall specify the particular nature and amount of the claim or demand." The notice here given was in writing and was as follows: "To the Sheboygan and Fond du Lac R. R. Co: Please take notice that the following named persons have claims against the Sheboygan and Fond du Lac R. R. Co., amounting to the sum set opposite their several names, for work and labor and services rendered on the construction of said R. R. between the 15th Nov. and the 15th Dec., 1871. August Mundt, $19.07. And they look to said company for their pay. Dated, Ripon, Dec. 27, 1871." The notice was signed by the attorneys for the present plaintiff, who were at the same time attorneys for several other laborers whose claims were included in the same notice. It is objected that the notice was defective in not naming the contractor or subcontractor for whom the work was performed, and argued that one object in requiring the notice was to apprise the company of the name of

the contractor for whom the claimant worked, in order that the company might withhold the pay of such contractor and in that way protect itself from double payment. It might have been very well, and probably would have been more convenient for the company, had the notice contained the name of the contractor or employer of the claimants, but it can scarcely be asserted that the name of the employer was any part of the nature of the claim within the meaning of the statute, and it clearly had nothing to do with the amount of it. The statute does not in terms require the name of the employer to be given, and considering the ample means and facilities which the company must possess for ascertaining such fact, we cannot say that the giving of such name was requisite or was intended in order to constitute a sufficient notice.

The statute likewise provides that the notice shall be given to the company "within thirty days after such claim or demand shall have accrued." The claimant here ceased work November 23, 1871, and the notice was served December 30, 1871. The time of payment of the laborers was on the 15th day of each month, and it was customary for them to wait until the 15th of the next month for payment for all work done by them after the 15th of the last month, and such custom appears to have entered into and been treated as part of the contract for labor. We are of opinion that the demand of the plaintiff did not accrue until the 15th day of December, 1871, and consequently that the notice was served within the time prescribed by the statute.

In conclusion, we remark that it would be doing injustice to our own feelings not to acknowledge our obligations for the assistance rendered by the very clear and able argument made at the bar by counsel for the plaintiff.

*By the Court.*— Judgment affirmed.