### WIGGIN *v.* KNIGHTS OF PYTHIAS.

*(Circuit Court, W. D. Tennessee.    June 18, 1887.)*

1. LIFE INSURANCE—KNIGHTS OF PYTHIAS—BENEFIT CERTIFICATE—PAYMENT OF DUES—"ARREARS" AND "DUES" DEFINED.
    According to article 11, section 1, of the constitution of the endowment rank of the Knights of Pythias, a benefit certificate of life insurance is not forfeited for the non-payment of the local lodge dues until the member is more than six months "in arrears" for the dues.    *Held,* therefore, that under the by-laws of Constantine Lodge, No. 23, regulating the payment of dues to that lodge, they are not demandable in advance at the beginning of the term for which they are leviable, but at the end of that term, and do not become "in arrears" until after that time, although they may be paid, and in practice generally are, before that date.

2. SAME—CONSTRUCTION OF CONTRACT—FRATERNITY LAW.
    Although the rules and regulations of a society or order enter into and become a part of the contract of life insurance which it makes with its members, its own practice or opinion as to the meaning of the words used to express the rule or regulation in controversy is not binding on the courts, in construing the contract, if the language be plain, unambiguous, and well understood to have a fixed meaning, either generally or as a technical term of the law.    The latter meaning will be given to the words used as in other cases for the interpretation of contracts.

Suit upon certificates of life insurance in the endowment rank of the Knights of Pythias for $3,000.    Defense, that the local lodge dues, amounting to four dollars, were unpaid at the time of the death of the member, and were "more than six months in arrears," whereby the insurance was forfeited under the contract, as interpreted by the rules and regulations of the order.    The member had paid all the assessments for death, and was not otherwise in default except as to the lodge dues. The other facts appear in the opinion of the court.    Jury waived.

*Miller & Gillham,* for plaintiff.

*Frayser & Scruggs,* for defendant.

HAMMOND, J.    We need not at all consider any of the interesting questions argued in this case except that which relates to the time when the lodge "dues" become in arrears, for, in the view the court takes of

that matter, all else becomes immaterial. For the purposes of this case it may be conceded to the fullest extent that the certificate for life insurance in the endowment rank is absolutely forfeited for the non-payment of dues which are in arrears for six months; and that there is no possible escape by waiver, estoppel, or what not from that forfeiture; that the payment of assessments for the death of members after the forfeiture takes place, whether with or without knowledge on the part of the endowment rank of the delinquency for dues, does not affect the forfeiture; that no declaration of forfeiture or suspension is necessary; that good standing in the local lodge is an essential prerequisite to entitle a member to the benefits of the endowment rank; and that the courts will enforce the fraternity law, in these respects, as a part of the life insurance contract. And yet the court finds the fact to be that the decedent in this case was not "more than six months in arrears for dues in his lodge" at the time of his death, and therefore had not forfeited his benefit certificate of life insurance in the endowment rank of the defendant order, and the plaintiff is entitled to judgment for the $3,000, and interest.

The facts are that Wiggin died on the thirteenth day of October, 1883, having paid all assessments necessary to keep his life insurance benefit in force, but leaving unpaid four dollars of dues to his local lodge; and the question is whether, under the rules and regulations of the order, they were *in arrears* more than six months. The constitution of the endowment rank, in which the member obtains the benefits of the life insurance department of the order, provides as follows:

"Art. 11, § 1. A member shall be considered in good standing in the section, as regards dues, who is not more than six months in arrears for dues to his lodge; and shall not be considered in good standing, as regards dues, when he is more than six months in arrears for dues in his lodge.

The general laws for the government of subordinate lodges in Tennessee enact as follows:

"Art. 5, § 1. Each subordinate lodge shall regulate its dues and benefits: provided, however, that a member who is one year in arrears shall stand suspended, unless he be under charges."

The by-laws of Constantine Lodge, No. 23, contain the following regulations:

"Sec. 6. Members of this lodge shall pay into the treasury thereof, as dues, the sum of $6.00 per year, payable semi-annually, at the last stated meetings in June and December."

"Sec. 35. All members who shall refuse or neglect to pay all dues, assessments, and fines in full, at the end of each semi-annual term, shall be declared in arrears, and non-participants in any of the benefits of this lodge."

"Sec. 36. The terms begin on the first days of January and July, and end on the last days of June and December."

The officer of the lodge introduced as a witness testifies that the dues were not payable in advance, but at the end of each term, and this is clearly the meaning of the rules of the lodge already quoted. Each lodge has the power to regulate that matter for itself, may make the dues

payable in advance, or at the end of the period for which they are leviable; but the pay-day does not come until the time fixed for it, and they cannot, in the nature of the words used to impose the forfeiture insisted upon, be *in arrears* until that day is past, whatever day it be. The fact that the members may pay the dues at any time during the term, that is to say, in advance of the day fixed for obligatory payment, does not at all affect the question; nor does the fact, if it be so, that most of the members do pay before that final day of reckoning the charge, affect it; nor does the opinion of the members or of the officers of the lodge, or of the lodge itself, affect it.    These words of the by-laws become part of the contract for life insurance, and, in the courts, must receive the ordinary interpretation put upon the contracts containing them.    *Watson* v. *Jones,* 13 Wall. 679, 11 Amer. Law Reg. (N. S.) 439, and *McMurry* v. *Knights of Honor,* 18 Cent. Law J. 373, and authorities cited.    Nor does this principle of construction of the contract at all impinge upon the doctrine that the fraternity may make its own laws and interpret them as it will, and that these laws, so interpreted, will be enforced by the courts; nor upon the ruling in *McMurry* v. *Knights of Honor,* 20 Fed. Rep. 107, 18 Cent. Law J. 372, that these certificates of benefit for life insurance depend upon the rules and regulations of the order issuing them for their validity and effect.    Everybody will agree to that; but these benevolent associations or fraternities, not more than other parties to contracts, cannot be allowed to construe the words they use in making agreements otherwise than according to their plain and unambiguous meaning, in the English language they employ, whether of the words of the contract itself or of the rules and regulations which become, by the principle they insist on, embodied in the contract as a part of it.    They cannot be permitted to interpret the contract as they please, and become their own judges of what they mean by the use of the words employed that have either a technical or well-defined signification, known of all men who use the language.    Legislatures and parliaments cannot do that, and even they are bound by the common meaning of the words they use in their statutes which become part of a contract. But no proof here shows that this order ever gave any other interpretation to the words than that we give them here.    The decisions of the supreme chancellor and the supreme lodge cited from its journals of 1881, pp. 2290, 2291, 2479, 2487, and 2490, and from the journal of 1883, p. 2788, only hold that death assessments paid by a member who is more than six months in arrears for lodge dues are irregularly collected, and should be returned, and that such assessments do not relieve the forfeiture of life insurance.    The officers of Constantine Lodge, No. 23, only say that members may pay before the end of the term and do, but not that they *must* pay before that date.    If any local lodge should wish to make the dues payable in advance, it can do so, and may fix any day of payment it chooses, but it cannot alter the plain meaning of the words "in arrears," and declare a sum owing to it to be in arrears before it is finally and absolutely demandable and payable as a matter of fixed obligation as to time of payment; not, at least, when these words become

a part of any contract the order makes, whether with a member or other person. But Constantine Lodge has not undertaken to do that, for, under its by-law No. 35, the dues are payable, in express terms, "at the end of each semi-annual term," and not sooner. It has no power to declare them *in arrears* before that time, except by changing the by-law so that the pay day shall come at an earlier date. The member, when the end of the semi-annual term is reached and is *past*, is, by the by-law, "declared" or deemed to be "in arrears," but the six-months grace allowed by the endowment rank *begins* at that time and does not *end* there, as has been supposed.

That this is always the fixed and technical meaning of "arrears" is too plain for argument. The oldest lexicographer of law terms known to me defines the word as coming "from the French *arriere, retro;* behind; money unpaid at the due time, as rent behind." Cowell, Law Dict. h. t. To the same effect are all the dictionaries. Jac. Dict.; Bouv. Law Dict.; Abb. Law Dict.; Soule, Syn.; Roget's Thes.; Webster's Dict.; Worcester's Dict. The same meaning is developed if we examine the legal signification of the words "due" or "dues," and "accrue," and the like, in their relation to this idea of being "in arrears." The word "due," unlike "arrears," has more than one signification, and expresses two distinct ideas, and this distinction is important in relation to its use in these rules and regulations. "At times it signifies a simple indebtedness, without reference to the time of payment. *Debitum in presenti, solvendum in futuro.* At other times it shows that the day of payment has passed." *Scudder* v. *Coryell,* 5 N. J. Law, 340, 345. It is evidently used in the rules and regulations of this order in the first of these significations, and not at all in the second; and hence there is some confusion of ideas, perhaps, in their interpretation. But there is no such ambiguity about the word "arrears," as has been shown by its definition. The cases of *Moss* v. *Gallimore,* 1 Doug. 279, and *Birch* v. *Wright,* 1 Term R. 378, and many others in the law concerning real property, illustrate this meaning, when used to express that "rent is in arrears," etc. Always, it must be *past* due to be "in arrears." Also the case of *Mundt* v. *Sheboygan R. Co.,* 31 Wis. 451, construing a statute for the protection of laborers which required that notice should be given "within thirty days after such claim or demand shall have accrued," is instructive. It was there held that a claim for wages already earned and payable, but which, by the custom of the railroad company and its laborers, were to be paid on the fifteenth day of the next month, as a pay-day, did not accrue until that pay-day arrived, and that this custom became a part of the contract.

Here the disputed dues for the term commencing January 1st, and ending June 30th, did not become finally payable until the latter date, after which only did they become "in arrears;" and, as Wiggin died before the six months' indulgence expired, his policy was not forfeited by the very terms of the contract itself. Judgment for the plaintiff.