(110 So. 413)

No. 27460.

FRANK v. WATERS et al.

(Oct. 5, 1926. Rehearing Denied Nov. 2, 1926.)

*(Syllabus by Editorial Staff.)*

1. **Mechanics' liens** ⚖️108—Statute does not entitle one furnishing materials to subcontractor to claim a lien; "contractor" (Act No. 139 of 1922, §§ 1, 2).

Act No. 139 of 1922, providing by section 2 for a lien for labor and materials in favor of persons having a claim against the undertaker, "contractor," master mechanic, or contracting engineer, does not entitle one furnishing materials to a subcontractor to claim a lien, notwithstanding section 1 and part of section 2, requiring owner to exact a bond in favor of all subcontractors, journeymen, etc.

2. **Statutes** ⚖️225¾.

Where statute, previously interpreted by Supreme Court, has been re-enacted, without material change, presumption is that Legislature intended same interpretation to be placed on re-enacted act.

Land, Rogers, and Brunot, JJ., dissenting.

Appeal from First Judicial District Court, Parish of Caddo; T. F. Bell, Judge.

Proceeding in concursus by Mrs. Rebecca M. Frank against J. W. Waters and others, in which she cited those whose claims were of record against her property to assert their rights. From a judgment rejecting the claim of the Hardman Company, it appeals. Affirmed.

Dimick & Hamilton, of Shreveport, for appellant C. C. Hardman Co., Inc.

Blanchard, Goldstein & Walker, of Shreveport, for appellee Union Indemnity Co.

OVERTON, J. Mrs. Rebecca M. Frank, the plaintiff herein, let a contract to J. W. Waters to construct for her a residence in the city of Shreveport. Waters sublet parts of the contract to others. The painting of the building was sublet by him to J. A. Stephens, and the C. C. Hardman Company, Inc., sold to Stephens paints, oil, turpentine, and other material with which to do the painting. The materials so furnished were used in painting the building, and there is a balance due the Hardman Company of $252.50 for them.

The Hardman Company caused a sworn statement of its account to be timely recorded in the mortgage records and a similar statement to be seasonably delivered to plaintiff.

There were other claimants against the building, whose claims had been served on plaintiff and recorded, and, when the building was completed, plaintiff instituted the present proceeding, convoking a concursus, in which she cited those whose claims were of record to assert their rights, and also the contractor and the Union Indemnity Company, which is the surety on the contractor's bond, to defend their interests, and at the same time asked for judgment against the contractor and against the surety company for certain alleged defects in the building.

[1, 2] The case was put at issue, and resulted in a judgment, which, among other things, rejected the claim of the Hardman Company, on the ground that a furnisher of material for the construction of a building has no lien on the building and no claim against the surety company on the main contractor's bond for the amount due for the material furnished to the subcontractor.

Of the various parties to the proceeding, the Hardman Company alone has appealed from the judgment rendered. Both sides agree that the only issue to be determined is whether the furnisher of material to a subcontractor may successfully claim a lien and obtain judgment against the surety on the principal contractor's bond for material furnished to the subcontractor, when the bond is given under and in accordance with Act

No. 139 of 1922, the act in force when the building was constructed.

The obligation of the bond is in accordance with Act No. 139 of 1922, and, in so far as pertinent, is as follows:

"The conditions of this obligation are such that if the said principal (J. W. Waters) shall faithfully perform said contract on his part, according to the terms, covenants and conditions thereof, and shall pay all subcontractors, workmen, laborers, mechanics and furnishers of materials, as their interest may appear, then this obligation shall be void, otherwise to remain in full force and effect."

Act No. 139 of 1922, the act under which the building was constructed and the bond given, in so far as pertinent, reads, including the title, as follows:

"An Act.

"Relative to the building contracts: providing for the bond to be given in connection therewith, for the recordation of the contract, and bond and proceedings to be had thereunder and to provide for the creation, recordation and recognition of liens and privileges and the protection of contractors, architects, consulting engineers, subcontractors, laborers, material men, mechanics, journeymen, cartmen, truckmen, and all others who shall do or perform any work or labor upon or furnish material, machinery or fixtures for any building or other structure upon land in this State.

"Section 1. Be it enacted by the Legislature of Louisiana, that every contract hereafter made or entered into for the repair, reconstruction, erection or construction of a building or of any other work by an undertaker, contractor, master mechanic, contracting engineer, shall be reduced to writing and signed by the parties under private signatures, or by authentic act, and shall be recorded in the office of the recorder of mortgages for the parish wherein the building or said work is to be erected or performed before the day fixed on which said work is to commence and not later than thirty days after the date of said contract and such recordation shall preserve the liens and privileges, which liens and privileges are hereby created, on the building or other structure so repaired, reconstructed, erected or constructed, and on the land on which it is situated, in favor of every undertaker, architect, consulting engineer, contractor, master mechanic, or contracting en-

162 LA.—9

gineer and subcontractors, workmen, journeymen, cartmen, truckmen, laborers, mechanics or furnishers of material, machinery or fixtures as their interest may arise. The owners of such work shall require of said undertaker, contractor, master mechanic, or engineer, a bond with good and solvent surety as follows. * * *

"Section 2. The bond shall be attached to and recorded with the contract in the mortgage office as above set forth, and the conditions of the bond shall be the true and faithful performance of the contract and the payment of all subcontractors, journeymen, cartmen, truckmen, workmen, laborers, mechanics and furnishers of material, jointly as their interest may arise. *Every person having a claim against the undertaker, contractor, master mechanic or contracting engineer* shall after the date of the completion of the said work by, or the date of default of the undertaker, contractor, master mechanic or contracting engineer, mail or otherwise send a sworn itemized statement thereof to the owner or his architect or other representative, and record a sworn statement of the amount thereof, or his contract, if it has been reduced to writing, in the office of the recorder of mortgages for the parish in which the said work has been done within thirty days after the registry of notice with the recorder of mortgages for the parish where the work is done, by the owner of his acceptance of the work or of the contractor's default, or the recordation of the architect's certificate of completion, until which time the delay to file claims of privileges shall not run. * * *" (Italics ours.)

It will be observed that, while in section 1 of the act the statute grants a privilege to the furnisher of material, and while in that section, and in the first sentence of section 2, the owner of the building is required to exact of the contractor, undertaker, master mechanic, or engineer a bond with surety thereon in favor of all subcontractors, journeymen, furnishers of material, etc., as their interest may arise, yet in the second sentence of section 2, where it is undertaken to provide the manner of preserving the privilege, the word "subcontractor" is omitted in the phrase reading "every person having a claim against the undertaker, contractor, master mechanic or contracting engineer shall," etc.

Because of this omission, the Union Indemnity Company, which alone is contesting in this court the claim of the Hardman Company, urges that the law does not grant a privilege to one who furnishes material to a subcontractor, and that one who does so is not protected by the bond furnished by the principal contractor. The Union Indemnity Company, in effect, concedes that, if the Legislature had inserted the word "subcontractor" after the word "contractor" in the phrase quoted, or at any other appropriate place therein, one furnishing material to a subcontractor would be entitled to a lien, and would have redress against the surety on the principal contractor's bond.

The act must be interpreted as a whole, and if, as contended by the Union Indemnity Company, the omission of the word "subcontractor" in the phrase providing for the preservation of the privilege, that is, in the phrase reading "every person having a claim against the undertaker, contractor, master mechanic or contracting engineer shall," etc., so affects the construction of the act as a whole as to show an intention to limit the privilege of the furnisher of material to those furnishing material to the principal contractor, then it follows that those furnishing it to a subcontractor do not come within the terms of the act, and are not entitled to the privilege, or to the protection, afforded by the bond required, granted in the preceding part of the act.

The words "undertaker," "master mechanic," and "contracting engineer," found in the phrase mentioned, all refer to the contractor. While the word "contractor" in its ordinary sense may mean a subcontractor (13 C. J. pp. 211, 212; Mundt v. Sheboygan, etc., R. Co., 31 Wis. 451, 457; Lester v. Houston, 101 N. C. 605, 8 S. E. 366), yet the word is ordinarily held to mean the principal contractor, that is, the one who contracts with the owner, when used in mechanics' lien statutes.

40 C. J. p. 132. It was in the sense last mentioned that the word was interpreted in deciding the case of Ketteringham v. Eureka Homestead Society, 140 La. 176, 72 So. 916, in interpreting Act No. 221 of 1914, a copy of which act is published with the decision of that case. The question presented in that case was practically the same as the one here presented. The act of 1914, which was the one there interpreted, is substantially the same, in so far as it bears on the question there presented, and, in fact, to that extent is almost word for word the same as the act of 1922, interpretation of which is involved in this case. In the act of 1914 the word "subcontractor" was omitted from that part of the act providing for the preservation of the privilege, as it is in the act of 1922. In the case cited it was said that "throughout the act [referring to the act of 1914] the words 'undertaker, contractor, master mechanic, or engineer' are grouped as we here find them, and are manifestly intended to designate the main contractor and no one else," and the court there held that the statute was not susceptible of any other construction than that the persons who, under it, "may record a claim and notify the owner are those alone who have claims against the main contractor."

The Ketteringham Case is so much like the present case that we must either follow it or overrule it. After careful consideration, we have reached the conclusion that we should not overrule the case. At the time that the decision in that case was handed down, the Legislature had corrected the defect in the act of 1914, if defect it was, by Act No. 262 of 1916, by inserting the word "subcontractor" in the clause providing for the preservation of the privilege, so as to provide for those having a claim against the subcontractor. Therefore, when the Legislature adopted the act of 1922, it had before it the act of 1914, which this court had interpreted in the Ket-

teringham Case as not embracing those furnishing material to subcontractors, and the act of 1916, with reference to which, it may be here observed, this court had expressed the view, in the case cited, that that act did embrace those furnishing material to subcontractors. With these two acts, and with the interpretation placed on them in the Ketteringham Case before it, the Legislature, in adopting the act of 1922, departed from the act of 1916, the law then in force, and returned, so far as involves the question here presented, without material change, to the phraseology of the act of 1914, omitting the word "subcontractor" from the clause mentioned, thereby making no provision for one having a claim against a subcontractor. The presumption is, in the absence of words conveying a contrary purpose, that the Legislature returned, without material change, to the phraseology of the act of 1914 with respect to the question now before us, with the intention that the same interpretation should be placed on the act of 1922 as was placed on that of 1914. 36 Cyc. p. 1153; La Selle & Brother v. Whitfield, 12 La. Ann. 81; James v. Thompson, 12 La. Ann. 174; King v. Lastrapes, 13 La. Ann. 582; Crescent Bed Co. v. City of New Orleans, 111 La. 124, 35 So. 484; Lehman v. Lehman, 130 La. 960, 58 So. 829. It may be here observed that, as was the case in 1916, the Legislature in 1926 corrected the defect, if such it was, that was brought about by the act of 1922 by Act No. 298 of 1926.

Our conclusion is that the act of 1922 does not embrace those furnishing material to a subcontractor.

For the reasons assigned, the judgment appealed from is affirmed.


LAND, ROGERS, and BRUNOT, JJ., dissent.