**Clark J. MONSON, Plaintiff,**

v.

**LIFE INSURANCE COMPANY OF NORTH AMERICA, Defendant.**

**No. CV–R–81–71–ECR.**

United States District Court,
D. Nevada.

March 21, 1983.

Joseph J. Kay, Reno, Nev., for plaintiff.

Hibbs, Newton & Roberts, Reno, Nev., for defendant.

## MEMORANDUM DECISION AND ORDER

EDWARD C. REED, Jr., District Judge.

Defendant has moved for summary judgment on the grounds that: (1) Plaintiff's decedent died no earlier than September 1, 1980, after his insurance coverage had terminated at midnight of August 31, 1980, and (2) no conversion privilege or other factor extended the coverage beyond August 31, 1980. For the reasons discussed below, Defendant is not entitled to judgment as a matter of law, so that the granting of its motion would be erroneous. *See* Fed.R.Civ.P. 56(c).

Plaintiff's decedent was covered by a group accident insurance policy issued to his employer by Defendant. The decedent had been employed, until August 15, 1980, by a Nevada subsidiary of DiGiorgio Corporation, whose principal place of business is in

San Francisco, California. According to Defendant's version of what happened, the decedent died accidentally, by drowning, either the morning of September 1, 1980, or sometime thereafter. His body was not discovered until September 12th.

The policy provides that: "Coverage for any Insured who ceases to be an eligible person for any reason shall terminate on the premium due date next following the date such eligibility ceases." It is clear that the decedent's eligibility ceased on August 15, 1980, when he terminated his employment.

Another clause in the policy specifies: "The mode of premium payment under this policy shall be monthly in arrears." Defendant alleges that the employer routinely paid each monthly premium before the last day of each month, which was the understood premium due date. It is Defendant's position that coverage terminated at midnight of Sunday, August 31, 1980, that being the premium due date next following the date when the decedent's eligibility ceased.

Both sides have submitted memoranda of points and authorities, transcripts of depositions and various documents. Defendant also has filed affidavits. Oral argument has been waived, and the Court feels fully advised.

█ The master policy was delivered to the employer in California. A certificate evidencing the decedent's coverage under the policy was delivered to him in Nevada by his employer. The question of which state's law should govern is answered by *Boseman v. Connecticut General Life Ins. Co.,* 301 U.S. 196, 57 S.Ct. 686, 81 L.Ed. 1036 (1937). The following factors, set out on pp. 202–203, 57 S.Ct. pp. 689–90, indicate *Boseman* is on "all fours" with the instant case: (1) Neither the decedent nor any other covered employee was a party to the insurance contract or had any voice in the negotiation or consummation of the contract; (2) the terms of the policy were settled by the insurance company and the employer; (3) eligible employees were given the opportunity to be covered by the insur-

ance upon authorizing the employer to make payroll deductions; (4) the policy did not of itself insure the decedent or any other named person, it merely made available specified insurance to certain employees; (5) the insurer looked only to the employer for payment of premiums; (6) the employer, for the benefit of its covered employees, assumed the burden of paying the premiums to the insurer; and (7) by applying to his employer for coverage, an employee accepted the provisions of the policy.

*Boseman* points out that "a contract is governed by the law with a view to which it was made." p. 202, 57 S.Ct. at p. 689. The policy delivered to the decedent's employer in California provides that any provision of the policy which "is in conflict with the statutes of the state in which the Policy was delivered or issued for delivery is hereby amended to conform to the minimum requirements of such statute." Thus, the parties to the insurance policy here involved agreed that it should conform to the requirements of California law.

█ The policy also states that the policy itself, the application of the employer and the individual applications of the employees shall constitute the entire contract between the parties. The certificate of insurance, therefore, serves merely as evidence that the particular employee is covered by the policy. It is not part of the contract, and the decedent's rights would be the same even if a certificate had not been delivered to him. Consequently, the state where the certificate was delivered to the employee is not determinative of which state's law should control the construction of the policy. *Boseman, supra* at pp. 203–204, 57 S.Ct. at pp. 689–90. This guideline results in the laudable objective of the policy having the same meaning and affording the same protection no matter in which state a covered employee resides. *Id.* at p. 206, 57 S.Ct. at 691; Restatement 2d, Conflict of Laws § 192(h).

For the foregoing reasons, it is concluded that the law of the State of California

governs the construction to be given the insurance policy in this case.

As above mentioned, the decedent's coverage terminated "on the premium due date next following" August 15, 1980. Further, the policy provides that "premium payment under this policy shall be monthly in arrears."

■ Unambiguous words used in contracts of insurance should be given the meaning that common speech imports. *Aschenbrenner v. U.S.F. & G. Co.,* 292 U.S. 80, 85, 54 S.Ct. 590, 592, 78 L.Ed. 1137 (1934); *Pendell v. Westland Life Ins. Co.,* 95 Cal. App.2d 766, 214 P.2d 392, 395 (Cal.1950). The word "arrears" is not ambiguous; a payment is not in arrears until it is past due, that is, the day after the date or period specified in the contract. *Wiggin v. Knights of Pythias,* 31 F. 122, 124 (W.D. Tenn.1887); *Independent Council No. 2 v. Lucas,* 273 F. 320, 322 (D.C.Cir.1921). In *Wiggin,* dues that were required to be paid by the end of June were held to have fallen into arrears the day after the last day of June. In *Lucas,* also, dues that had to be paid during the calendar quarter ending June 30th were declared not to have been in arrears until July 1st.

■ When the policy provides the premium due date, without other contradictory provisions, courts will be governed by the date specified. *Farr v. Sun Life Assurance Company of Canada,* 351 F.Supp. 299, 303 (N.D.Miss.1972). It is not legally significant that the employer may have made a practice of paying in advance or that it thought the policy required it to pay when it did; the unambiguous provision of the insurance contract should be given its ordinary interpretation. *Wiggin v. Knights of Pythias, supra* at p. 124. Applying this rule to the instant matter, the fact that the decedent's employer made a practice of paying its premium on or before the last day of each month does not alter the legal conclusion that each of such payments wasn't due until the first day of the month following, because the payments were payable "monthly in arrears."

■ The premium due date next following the decedent's August 15, 1980, termination of employment and eligibility was Monday, September 1, 1980. It was a holiday, namely Labor Day. Calif.Civil Code § 11 specifies that when an act is appointed by contract to be performed upon a particular day which falls upon a holiday, it may be performed on the next business day with the same effect as if it had been performed on the day appointed. It applies to the act of payment of insurance premiums. *See Northey v. Bankers' Life Ass'n,* 110 Cal. 547, 42 P. 1079, 1080 (Cal.1895); 39 Cal. Jur.3d, Insurance Contracts § 95. As a result, the decedent's employer's premium due date wasn't until September 2, 1980.

■ There is enough evidence before the Court to indicate that the decedent died on September 1, 1980, to raise a genuine issue as to the material fact of the date of his death.

A leading California case, *Williams v. American Casualty Co. of Reading, Pa.,* 6 Cal.3d 266, 98 Cal.Rptr. 814, 491 P.2d 398 (Cal.1971), has concluded that in the context of a group insurance program under which employees' premium payments are administered through payroll deductions, a reference to "premium due date" may be ambiguous. It may refer either to the date on which the employer's premium is payable or to the date on which the individual employee's payment is made via payroll deduction. *Id.* 98 Cal.Rptr. at pp. 816 and 819, 491 P.2d at pp. 400 and 403. This ambiguity would not assist the motion for summary judgment of the defendant insurance company, however. The statement of deductions made from the decedent's vacation pay, for the period ending August 17, 1980, reveals that no deduction had to be made for his accident insurance coverage. Apparently it already had been deducted for the month of August. Therefore, if he had not terminated his employment, the next such deduction wouldn't have been made until September.

■ Calif. Insurance Code § 10209 also precludes the granting of the defendant insurance company's motion for summary

**1358**

judgment. The statute applies to group accident policies. *See Preseau v. Prudential Ins. Co. of America,* 591 F.2d 74, 81 (9th Cir.1979). Subsection (b) grants an employee who has terminated employment thirty-one days to convert to individual coverage. The first paragraph of subsection (d) specifies that if the ex-employee dies during the thirty-one day period, the amount of life insurance for which he was entitled to apply shall be payable as a claim under the group policy, regardless of whether application was made or the first premium paid. The decedent herein died within that thirty-one day period.

IT IS, THEREFORE, HEREBY ORDERED that the defendant's motion for summary judgment be, and the same hereby is DENIED.