EMINENT HOUSEHOLD OF COLUMBIAN WOODMEN *v.* McCRAY.

## Opinion delivered December 18, 1922.

1. INSURANCE—FRATERNAL SOCIETY—CONSTITUTION AND BY-LAWS.—The constitution and by-laws of a fraternal insurance company become part of its contract of insurance, so as to bind insured, provided they are not inconsistent with the terms of the contract.

2. INSURANCE—BY-LAW INCONSISTENT WITH POLICY.—A by-law of a fraternal insurance company providing that "death by one's own hands, whether sane or insane," shall not be contested, but in such event only one-fifth of the benefits are payable, is inconsistent with the policy provision reducing the amount of benefits to one-fifth in case of "suicide," the term "suicide" meaning self-destruction by a sane person; and the policy provision controls, so that full recovery can be had for self-destruction while insane.

3. INSURANCE—POLICY CONSTRUED AGAINST INSURER.—Doubtful language of an insurance policy is given the strongest interpretation against insurer which it will reasonably bear.

4. INSURANCE—CONSTRUCTION OF STATUTE.—Crawford & Moses' Dig., § 6076, as to contents of benefit certificates issued by

fraternal benefit societies, has no application to an insurance contract issued before enactment of the statute.

Appeal from Saline Circuit Court; *W. H. Evans,* Judge; affirmed.

### STATEMENT OF FACTS.

Lula McCray brought an action in the circuit court against the Eminent Household of Columbian Woodmen to recover the sum of $2,000 claimed by her as due upon a benefit certificate on the life of her husband, Willie N. McCray, in which she is named as beneficiary. The policy was dated November 11, 1915, and the insured paid all the dues and assessments on the certificate. On the 18th day of June, 1921, the insured committed suicide by hanging himself with a rope from a rafter in his barn. Proof of death was furnished the company, as required by the policy.

The policy, or beneficiary covenant, as it is termed, contains the following: "This covenant shall not be contested for suicide, but there shall be due and payable, in the event of said destruction, only one-fifth of the amount of benefits which would have been payable in the event of death by natural causes."

The defendant is a fraternal insurance company organized under the laws of the State of Georgia for the purpose of doing a general life insurance business, and is duly authorized to do business in the State of Arkansas. Sec. 236 of its constitution and by-laws reads as follows:

"Suicide, or death by one's own hands, whether sane or insane, shall not be contested, provided all the requirements and conditions of the covenants and the constitution have been complied with, but there shall be due and payable, in the event of such self-destruction, whether sane or insane, only one-fifth of the amount of benefits which would have been payable in the event of death by natural causes."

The case was tried before the court sitting as a jury. The court found that the plaintiff should recover the face

of the covenant or insurance policy sued on, less the lien accrued against it. Whereupon judgment was rendered in favor of the plaintiff against the defendant for $1,817.86.

To reverse that judgment, the defendant has duly prosecuted an appeal to this court.

*Robert C. Knox* and *Hamilton Moses,* for appellant.

The constitution and by-laws of appellant formed a part of the contract. 81 Ark. 512; 52 Ark. 201; 104 Ark. 528; 135 Ark. 65; 145 Ark. 313; § 6076, C. & M. Dig. The suicide provision of the policy should be enforced. 15 Wall. 580; 36 Atl. 734; 65 N. Y. 232; 66 S. W. 37; 68 N. W. 48; 60 N. E. 39; 79 N. E. 160; 118 Fed. 377; 41 S. W. 464; 31 N. W. 780; 79 N. E. 160; 41 Atl. 362; 88 N. W. 687; 222 S. W. 967; 117 S. W. 788; 49 S. W. 153; 17 L. R. A. N. S. 364; 239 S. W. 37; 221 S. W. 758; 190 S. W. 712; 151 N. W. 314; 66 N. W. 697; 103 N. W. 402; 108 Pac. 870; Kerr on Ins. 395; 17 L. R. A. 91; 93 U. S. 284; 127 U. S. 661; 150 U. S. 475; 166 S. W. 598; 39 So. 751; 49 Atl. 784; 4 Cooley, Briefs on Ins. 3248; Elliott on Ins. 368; Bacon on Benefit Societies 352; Vance on Ins. 552; Elliott on Contracts, sec. 4369; 14 R. C. L. 1232; 31 N. W. 779; 88 N. W. 687.

*N. A. McDaniel,* for appellee.

The constitution and by-laws are a part of the contract unless inconsistent with the terms of the certificate. 52 Ark. 201; 55 Ark. 210; 80 Ark. 419; 81 Ark. 512; 105 Ark. 143. Sec. 6076, C. & M. Dig., was passed after the contract was made. The policy should be construed most strongly against insurer. 102 Ark. 1; 84 Ark. 432; 97 Ark. 425; 116 S. W. 314.

Hart, J. (after stating the facts). It will be noted that the covenant or policy sued on provided that it shall not be contested for suicide. The defendant was a fraternal insurance company, and one of its by-laws provided that "suicide, or death by one's own hands, whether sane or insane, should not be contested," etc.

In *Sovereign Camp W. O. W.* v. *Compton,* 140 Ark. 313, it was held that the constitution and by-laws of a fraternal insurance company become a part of the contract of insurance so as to bind the insured, provided they are not inconsistent with the terms of the contract. This rule is conceded by counsel for the defendant, but they claim that the covenant and by-laws above referred to, when read together, may be harmonized and have the same meaning as the by-law. On the other hand, it is claimed by counsel for the plaintiff that the terms of the covenant and the by-law are inconsistent with each other, and that therefore the language of the covenant must control.

We are of the opinion that counsel for the plaintiff is correct in his contention. As we have already said, the language of the covenant is that it shall not be contested for suicide. A leading case construing a clause of this sort is that of *Life Insurance Co.* v. *Terry,* 15 Wall. (U. S.) 580. The court said: "We hold the rule on the question before us to be this: If the assured, being in the possession of his ordinary reasoning faculties, from anger, pride, jealousy, or a desire to escape from the ills of life, intentionally takes his own life, the proviso attaches, and there can be no recovery. If the death is caused by the voluntary act of the assured, he knowing and intending that his death shall be the result of his act, but when his reasoning faculties are so far impaired that he is not able to understand the moral character, the general nature, consequences, and effect of the act he is about to commit, or when he is impelled thereto by an insane impulse, which he has not the power to resist, such death is not within the contemplation of the parties to the contract, and the insurer is liable."

Again, in *Connecticut Life Ins. Co.* v. *Akens,* 150 U. S. 468, in discussing the question the court said: "This case is governed by a uniform series of decisions of this court, establishing that if one whose life is insured intentionally kills himself when his reasoning faculties are so

far impaired by insanity that he is unable to understand the moral character of his act, even if he does understand its physical nature, consequence, and effect, it is not a 'suicide' or 'self-destruction' or 'dying by his own hand,' within the meaning of those words in a clause excepting such risks out of the policy, and containing no further words expressly extending the exemption to such a case.''

Many other cases stating the rule might be cited, but the rule is too well settled to render a further citation of authorities necessary. In order to avoid this construction placed by courts upon the words, ''suicide,'' ''or death by his own hands,'' insurance companies began to insert in their policies stipulations against ''suicide, sane· or insane.''

In *Bigelow* v. *Berkshire Life Ins. Co.,* 93 U. S. 284, the policy excluded liability in case the insured should ''die by suicide, sane or insane,'' and it was held to be avoided upon proof that the insured shot and killed himself while insane. The court said that if the insured was conscious of the physical nature of his act and intended by it to cause his death, the policy was avoided, although at the time he was incapable of judging between right and wrong and did not understand the moral consequences of what he was doing. Continuing, the court said: ''As the line between sanity and insanity is often shadowy and difficult to define, this company thought proper to take the subject from the domain of controversy, and by express stipulation preclude all liability by reason of the death of the insured by his own act, whether he was at the time a responsible moral agent or not. Nothing can be clearer than that the words, 'sane or insane,' were introduced for the purpose of excepting from the operation of the policy any intended self-destruction, whether the insured was of sound mind or in a state of insanity. These words have a precise, definite, well understood meaning. No one could be misled by them; nor could an expansion of this language more clearly express the intention of the parties.''

Many other cases are cited by counsel for the defendant to the same effect, but, inasmuch as this is a leading case on the subject, we will not make any further citations, but will treat the by-law as having the meaning contended for by the defendant and as construed by the court in the case last cited. When this is done, however, we do not think that the by-law and the covenant can be harmonized with each other. Stipulations against "suicide, sane or insane," were placed in insurance policies in order to relieve the company from payment of the policy in all cases where the insured takes his own life. The "sane or insane clause" was inserted for the avowed purpose of changing the rights of the parties since the courts had construed the stipulation against suicide merely as referring only to the acts of a sane mind. The language of the covenant would have to give way to the language of the by-law in order to harmonize them. This is contrary to the general rule on the subject. The covenant is the contract between the parties, and it is only where its terms are not inconsistent with the by-laws that the latter become a part of the covenant or policy of insurance. To hold otherwise would be to make the by-laws control the express language of the contract which the parties signed and to which their attention was expressly directed at the time of signing. Insurance policies are usually prepared on blank forms prepared by experts of the company, and where the language used is doubtful it must be given the strongest interpretation against the insurer which it will reasonably bear. *Hope Spoke Co.* v. *Maryland Casualty Co.*, 102 Ark. 1.

Sec. 6076 of Crawford & Moses' Digest was passed by the Legislature of 1917, and has no application to this case, because the contract sued on was issued by the defendant in November, 1915, before the passage of the act.

It follows that the judgment will be affirmed.