## ACME LIFE INS. CO. v. WHITE.

### No. 1592.

Court of Civil Appeals of Texas. Eastland.

Nov. 6, 1936.

Oxford & McMillan, of Stephenville, for appellant.

Chandler & Chandler, of Stephenville, for appellee.

LESLIE, Chief Justice.

Mrs. Dixie White, beneficiary in a $2,500 life insurance policy held by her husband, James L. White, at the date of his death, filed this suit against the insurer, Acme Life Insurance Company, for the amount of the policy, penalties, attorney's fees, etc. The defendant entered a general denial and specially pleaded that the deceased came to his death by suicide, the effect of which act, under the terms of the

policy, limited recovery to the amount of premiums paid.

Trial was before the court without a jury, and at the conclusion of the same, judgment was rendered in favor of the plaintiff for the amount of the policy, 12 per cent. penalty, and attorney's fees of $833.33.

The policy was dated January 17, 1933, and James L. White died January 17, 1935. By proper assignments the controlling question is: Was January 17, 1935, the day of White's death, within or after two years from January 17, 1933?

The provision of the policy relating to suicide provides: "If the insured shall die by his or her own act while he or she is sane or insane, *within two years from the date hereof,* or while any initial agreement attached hereto is in effect, the liability of the company shall be limited to the amount of the premiums paid by the insured." (Italics ours.)

Obviously, if January 17, 1933, is excluded from the period of time designated as "two years from date hereof," then that period of time (two years) brings the suicide, if such, within the period of time which would limit recovery to the premiums paid. If said two years' period begins with, or includes, January 17, 1933, then the death of the policyholder occurred on the day following the expiration of the two years' time contemplated in the above provision of the policy, and any defense predicated upon that provision would not be available to the defendant.

It is stated in 41 Tex.Jur. p. 346, § 7: "In computing time 'from' or 'after' a specified day or event, the general rule is to exclude the first day and to include the last. But such terms do not have an absolute and invariable meaning, and they will receive an inclusive or exclusive construction according to the intention with which they are used. * * *"

The text cites many authorities supporting each proposition, and the remainder of section 7 cites instances in which the rule of excluding the first day and including the last has been applied in computing the period of time specified in contracts, statutes, etc. One such application of the rule excluding the first day was made by this court in Hardy v. City of Throckmorton, 70 S.W.(2d) 775, construing subdivision 6 of article 3266, R.S.1925.

As stated, the words "from" or "after" an event or day do not have an absolute and invariable meaning, and each should receive an inclusion or exclusion construction according to the intention with which such word is used. The application of proper rules of construction in this case brings the date "January 17, 1933," within the rule of inclusion. Such construction harmonizes the different provisions of the insurance contract and gives it a clear and reasonable meaning, although its terms be regarded as ambiguous in the respect under consideration.

The rule is well settled that in a case of ambiguity the construction of the policy will be adopted which is most favorable to the insured. This is so because the language employed in the contract is that of the company, and it is consistent with both reason and justice that any fair doubt as to the meaning of its own words should be resolved against it. Mutual Life Ins. Co. v. Hurni Packing Co., 263 U.S. 167, 44 S. Ct. 90, 68 L.Ed. 235, 31 A.L.R. 102; Eminent Household v. McCray, 156 Ark. 300, 247 S.W. 379; Grell v. Sam Houston Life Ins. Co. (Tex.Civ.App.) 157 S.W. 757; Dorroh-Kelly Merc. Co. v. Orient Ins. Co., 104 Tex. 199, 135 S.W. 1165. In arriving at our conclusion herein, we take into consideration certain phrases and expressions of the contract involved. For instance, it will be observed in the outset that if appellant's contention is to be upheld and "January 17, 1933," be excluded from the two years' period covered by the suicide clause, it follows that had the policyholder received his policy on that date and he had then committed suicide the full amount of the policy would have been collectible regardless of the suicide clause, which, according to the appellant's contention, would not have become operative until January 18, 1933, the day following delivery. This would be an unreasonable, if not an absurd, construction to give the contract.

What does the contract mean in this respect? We think it explains itself in the last provision of the policy wherein it is stipulated: "In witness whereof, Acme Life Insurance Company has caused this policy to be executed at its home office at Austin, Texas, *as of the 17th day of January, 1933,* on which date it becomes effective and from which date loan and nonforfeiture values shall be computed." (Italics ours.) Further, the application is a consideration for the policy and a part of the contract. The meaning or intention of the parties to the contract must be arrived

at by looking to all of its parts and the different instruments constituting it. The application contains the following: "Subd. 4. That if I die within the first and second *insurance years* from self destruction, sane or insane, the liability of the company shall be limited to the total amount of premiums paid on the policy, and no more." (Italics ours.)

In the nonforfeiture clause of the policy the expression is used "if at any time after the expiration of the second *policy year* \* \* \*"; in the incontestability clause it is recited "and it is incontestable after the second *policy year*"; in the two columns of table of loan and nonforfeiture values, the expression "at the end of *policy year*" is used; also, the expression *"twentieth policy year"* and *"current policy year."* In another section of the application there is the heading "Enter here any special features pertaining to the application." The first statement thereunder is "Date policy back to January 17, 1933. Taking age 45." In this part of the application is "subd. 4," above set out. (Italics ours.)

In this case, January 17, 1933, was, by the terms of the policy itself, and all the implications arising from use of the above-quoted expressions, made the first effective day of the "policy year" or "insurance year." Such specific terms and stipulations as found in the policy and above pointed out require that the expression "within two years from date hereof" (found in the suicide clause) be interpreted as beginning with and including January 17, 1933. The record affirmatively shows this and nothing to the contrary. This construction makes the first two "policy years" and the two years contemplated by the suicide clause coincide with each other, and such was undoubtedly the clear intention of the parties to the contract. Otherwise, the two years contemplated by the suicide clause would begin a day later (January 18th) than the effective date of the policy, and this situation would afford an immediate opportunity for suicide at the very time when one so inclined to do so might be most completely in the grip of an irresistible impulse to do so. As a practical matter policies may not be delivered upon their date, but there is no restriction against the parties consummating a contract and delivering the evidence thereof on that very day.

January 17, 1935, the day on which James L. White died, not coming within the two years covered by the provision of the policy relating to suicide, the fact of his suicide, if it be one, becomes immaterial in the present case. The assignments raising any question predicating defense upon that provision of the policy are overruled.

■ The appellant presents other assignments to the effect that the plaintiff's pleadings and testimony are insufficient to authorize a recovery of attorney's fees. More specifically, the contention is that plaintiff's pleadings and testimony sought recovery of a fee based upon the contingency of recovery, rather than a reasonable attorney's fee for the prosecution and collection of the loss, as provided for in article 4736, V.T.S.1936.

We have examined the pleadings and conclude that they are sufficient for recovery of the fee specified in the statute. If the pleadings be subject to criticism in any respect, no attack by way of special exception was directed to them in the trial court.

We have carefully considered the testimony by virtue of which the appellee seeks to sustain the judgment for attorney's fees amounting to $833.33. The plaintiff offered the testimony of two reputable attorneys upon the question of reasonable attorney's fees for the institution and prosecution of the suit. The first witness testified that if the fee were contingent upon recovery "30 to 40 per cent—possibly 50 per cent would be a reasonable fee," but that a "cash fee to take the case" should be "not less than 30 per cent." The second witness testified that a fee contingent upon recovery in such case should be "an amount equal to one-third of the face amount of the policy," but that "a cash fee in that case would be about $550 to $600."

■ The appellant's thirteenth assignment of error attacks the fee of $833.33 on the ground of excessiveness. We have considered the amount of the fee in the light of the attacks. We have concluded that under this record and the authorities in this state this court has the power to pass upon and determine the amount of a reasonable attorney's fee for plaintiff's attorneys in this case.

In Southland Life Ins. Co. v. Norton (Tex.Com.App.) 5 S.W.(2d) 767, 769, it was held that the Court of Civil Appeals, in determining whether remittitur should be required on account of excess of judgment and verdict allowing the plaintiffs an attorney's fee, was not bound either by the verdict or by the testimony of the witnesses

as to the reasonableness of the fee, but that the Court of Civil Appeals had the right "to look to the entire record in the case before them, and to view the matter in the light of the testimony, the record before them, the amount in controversy, and their own common knowledge and experience as lawyers and judges." This statement of the law relating to the question of excessiveness in recovery of attorney's fees has never been qualified, and the rule has been followed by various appellate courts in this state. Simmonds v. St. Louis, B. & M. Ry. Co. (Tex.Com.App.) 91 S.W.(2d) 332; Southland Life Ins. Co. v. Norton (Tex. Civ.App.) 9 S.W.(2d) 752; City of Eastland v. Owen (Tex.Civ.App.) 49 S.W.(2d) 534; Bryant v. Browning (Tex.Civ.App.) 48 S.W.(2d) 798; American Cent. Life Ins. Co. v. Alexander (Tex.Civ.App.) 39 S.W.(2d) 86, 90.

As we interpret the testimony of the first witness, the reasonable attorney's fee under the statute would be not less than 30 per cent. of the face value of the policy, which is $2,500. The second witness' testimony estimates such fee to be not less than $550 nor more than $600. In the light of this testimony, and taking into consideration all the elements warranted by the decisions above cited, we conclude that the judgment of the trial court in the matter of attorney's fees is excessive and that a reasonable fee under the circumstances for plaintiff's attorneys is $500.

It is therefore our order that if, within the time allowed by law for the filing of a motion for rehearing, the appellee, Mrs. Dixie White, shall file in this court a remittitur of all that portion of the judgment in her favor for attorney's fees in excess of $500, the judgment of the trial court will be so reformed and as reformed affirmed. Otherwise, such judgment in the matter of attorney's fees will be reversed and the cause remanded.

On Rehearing.

PER CURIAM.

The appellant's motion for rehearing has been duly considered, and it is in all things overruled, except as to the request for findings of fact upon the issue of whether or not James Luther White, the insured, committed suicide on January 17, 1935. This court has carefully considered the testimony bearing upon this issue, and we think that reasonable minds cannot differ upon the conclusions to be reached from a consideration of the same. In accordance with that view, we conclude that said White came to his death on said date by reason of an intentional, self-inflicted wound; that is, it is our opinion from the testimony that he committed suicide.