IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. PD-1907-05






ROBERT WILLIAM NESBIT, Appellant



v.



THE STATE OF TEXAS





ON STATE'S PETITION FOR DISCRETIONARY REVIEW


FROM THE FIFTH COURT OF APPEALS


DALLAS COUNTY





 Cochran, J., delivered the opinion of the Court, in which Price, Womack, Johnson
and Holcomb, JJ., joined. Keller, P.J., filed a concurring opinion. Hervey, J., filed a
dissenting opinion, in which Meyers and Keasler, JJ., joined.


O P I N I O N 



 Appellant was placed on "regular" community supervision or probation for ten years,
beginning on April 29, 1994. The State filed a motion to revoke probation on April 29, 2004. 
Appellant claimed, in essence, that his probation turned into a pumpkin at the stroke of
midnight on April 28, 2004, thus the State's motion to revoke was filed one day too late. The
court of appeals agreed with him, (1) and so do we.

I.


 Appellant was charged with the third degree felony of indecency with a child on
September 7, 1988. (2) On November 10, 1988, he pled guilty. The trial judge granted him
deferred adjudication and placed him on ten years' community supervision. On September 20,
1993, the probation department filed a "Notification of Violation," alleging that appellant had
committed an offense of indecent exposure on August 10, 1993. According to his therapist,
appellant is "an exhibitionist, a condition he has suffered from since he was a young adult." 
Although "his condition has very gradually improved," he had suffered a relapse. But his
therapist concluded that "[t]here is no evidence whatsoever that [appellant] even has the
potential for violent or dangerous behavior toward children or other adults." 

 At a hearing on April 29, 1994, the trial court adjudicated appellant's guilt and placed
him on regular probation for ten years, beginning that very day. One condition of his probation
was that he participate in the Electronic Monitoring Program (EMP) beginning on April 29,
1994, until September 5, 1994. That condition required appellant to remain at his residence
"at all times except during approved work hours or at other times approved in advance by the
court or probation officer." Throughout the next ten years, appellant was repeatedly required
to participate in the EMP program for short periods of time. 

 On April 29, 2004, the State filed a Motion to Revoke Probation alleging that he had
failed to avoid persons or places of disreputable character-namely he had admitted to his
probation officer that he had associated with prostitutes, used drugs of some sort, masturbated,
and viewed pornography. Most of these incidents had allegedly occurred in 1999 and 2000. 
The most recent occurred in 2002. The penultimate entry in the probation file states:
"Reviewed file and submitted file to Ct. Supervisor for PV motion; probation expires 4/28,
2004; (3) failed sex offender polygraph test administered; (4) continues with negative
behavior-recommend revocation." 

 Appellant filed a motion to quash the motion to revoke and claimed that the trial court
did not have jurisdiction because the motion was filed one day too late. He claimed that his
probation had expired at midnight on April 28, 2004. The trial court, admitting that the legal
issue was not settled, denied the motion, revoked appellant's probation, and sentenced him to
ten years in prison.

 In his sole issue on appeal appellant asserted that "the trial court did not have
jurisdiction to revoke his community supervision because the motion to revoke was filed one
day after the ten-year period of supervision ended." (5) Because this Court had not definitively
answered the question of when a term of probation ends, (6) the court of appeals analogized the
present situation to the similar one of when a sentence of imprisonment ends: "When a
defendant is sentenced to a term of imprisonment, that period expires on the day before the
anniversary date of the sentencing." (7) The court of appeals noted that "community supervision
is not a sentence" (8) in the literal sense because it is a conditional release into the community. 
"Nevertheless, a defendant on community supervision is subject to court-imposed restrictions
on his or her freedom during the period of the supervision." (9) Therefore, a term of community
supervision is more like a sentence than like other time periods, such as a statute of
limitations, in which a person suffers no disability or restriction of freedom. (10) Furthermore,
reasoned the court of appeals, "we see no reason to require appellant to spend one more day
on community supervision than he would have been required to serve had his sentence been
imposed." (11) Because "[t]he trial court does not have jurisdiction to revoke community
supervision if the motion to revoke is filed after the supervision period expires," (12) the trial
court's judgment of revocation was a nullity.

 The State filed a petition for discretionary review, asking "[h]ow should the date of the
expiration of a period of community supervision be calculated?"

II.


 The question of how one calculates the duration or expiration of a time period
frequently depends upon the purpose of that time period. Generally speaking, if one must
perform some act before the expiration of a time period, that period is computed by excluding
the first day and including the last day. But if one may exercise a particular right (or must
suffer a particular penalty) during a period of time, that time period generally begins on the
first day that the right may be exercised (or the penalty suffered) and expires at midnight of the
day before the anniversary of the period. For example, if you sign a one-year apartment lease
to begin on April 29th, the lease ends at midnight on the following April 28th. If one holds
office as a Court of Criminal Appeals judge beginning on January 1, 2003, the six-year term
of office ends at the stroke of midnight on December 31, 2008. If a person is sentenced to
ten years' imprisonment on April 29th, that sentence expires at midnight on April 28th ten years
hence. (13) Generally, one cannot double count the same day when speaking of the duration of
a time period which grants or denies rights. 

 The State correctly notes that the Code Construction Act states that a time calculation
computing a period of days generally excludes the first day and includes the last day. (14) But, as
noted by the court of civil appeals in McGaughy v. Richardson, (15)

 This rule [Tex. Rev.Civ.Stat. art. 5429b-2 § 2.04(c), the predecessor to §
311.014(c)] rests on another rule, that when time is to be computed from or
after a designated day, the designated day will be excluded while the last day
of the period is to be included. If the first day of the period is to be included,
however, the last day of the period is to be excluded. The last day is excluded
in these cases because if the first day and the last day are both included, the
period would be a month plus one day. (16)


No double counting. On the other hand, when a particular act must be performed sometime
within a specific period of time (such as the filing of a lawsuit (17) or a notice of appeal, or the
making of an announcement of ready for trial (18)) the Government Code states that the first day
of the period is excluded and the last day is included to ensure that the actor has a full time
period in which to perform that act. (19) 

 This Court has not always been clear on the duration of a time period for purposes of
a term of community supervision or probation. For example, in Ex parte Donaldson, (20) we
suggested in dicta that a six-year probationary period imposed on May 10, 1993, expired on
May 10, 1999. (21) And in Guillot v. State, (22) a case in which the defendant was placed on
probation on March 27, 1972, we noted that the State filed a motion to revoke probation well
after the probationary period "had expired on March 27, 1975." (23) But in Fulce v. State, (24) we
stated that when a defendant was placed on two-years' community supervision on February 18,
1994, that probation "was scheduled to expire on February 17, 1996, unless the trial court
extended it pursuant to [statutory authority]." (25) The difference between these cases appears
more semantical than substantive. Any distinction between 11:59 p.m. on the day before the
anniversary date and 12:01 a.m. on the anniversary date is akin to debating the number of angels
dancing on the head of a pin. 

 The operative rule is that the duration of a time period during which a person suffers
specified restrictions upon his freedom by virtue of either a sentence of imprisonment or
community supervision includes the first day in which such restrictions upon freedom
operate (26) and excludes the anniversary date. The same day cannot be double counted. This rule
is logical, fair, and in accord with prior precedent construing the Code Construction Act. (27) 

 III.


 In this case, appellant was placed on "regular" community supervision on April 29,
1994. The court of appeals held that his term of probation ended ten years later on April 28,
2004. (28) Because the term of community supervision began on the very day of "sentencing,"
appellant suffered some restrictions upon his freedom on that day. (29) We necessarily reject the
State's argument that appellant is required to serve ten years and a day when he was placed on
community supervision for exactly ten years, no more, no less. 

 We therefore agree with the court of appeals that the trial court did not have the
jurisdiction to revoke appellant's community supervision based on a motion to revoke filed the
day after his term of community supervision expired. We affirm the court of appeals.

Delivered: June 13, 2007

Publish
1. Nesbit v. State, 175 S.W.3d 565 (Tex. App.-Dallas 2005).
2. The probable cause affidavit alleged that appellant had exposed himself to two young girls at
an apartment complex swimming pool, and, after walking outside the apartment fence, he turned and
faced one of them again, saying, "Look at it just one more time, please!"
3. Five days earlier, an entry in the file stated: "P failed last monitoring polygraph prior to
expiration. P admits to paying for sex as well as masturbating in the offices of a girlfriend. P is due to
expire from probation on 4/29/2004."
4. Neither the results of a polygraph test nor the "fact"of failing a polygraph test are admissible in
a Texas criminal proceeding. See Nethery v. State, 692 S.W.2d 686, 700 (Tex. Crim. App. 1985)
("It has long been the rule in this State that the results of a polygraph test are inadmissible for all
purposes. Even if the State and the defendant agree and stipulate to use the results of a polygraph at
trial, we have held the testimony to be inadmissible.") (citations omitted).
5. Nesbit, 175 S.W.3d at 567.
6. The court of appeals noted that it had found cases from our Court 

 that would support both appellant's and the State's contentions as to the date
appellant's community supervision ended. See, e.g., Ex parte Donaldson, 86
S.W.3d 231, 232 (Tex. Crim. App. 2002) (per curium) (six-year probation
beginning on May 10, 1993 ended May 10, 1999); Ex parte Fulce, 993
S.W.2d 660, 662 (Tex. Crim. App. 1999) (two-year probation beginning
February 18, 1994 ended February 17, 1996). Neither case, however,
involved the dispositive issue in this appeal--whether the community supervision
ended on the day before or the day of the anniversary of the applicants' having
been placed on community supervision.

Id. at 567.
7. Id. at 567.
8. Id. (citing Speth v. State, 6 S.W.3d 530, 532 (Tex. Crim. App. 1999) ("The Code of
Criminal Procedure defines community supervision as involving a suspension of the sentence. In other
words, community supervision is an arrangement in lieu of the sentence, not as part of the sentence.").
9. Id.
10. Id. (rejecting the State's position that a term of community supervision is like a statute of
limitations period).
11. Id. 
12. Id. at 568.
13. See Ex parte Hale, 117 S.W.3d 866, 867 (Tex. Crim. App. 2003) (seven-year sentence
imposed on October 7, 1991 ended October 6, 1998); Ex parte Gabriel, 56 S.W.3d 595, 596 (Tex.
Crim. App. 2001) (per curiam) (eight-year sentence imposed on July 19, 1989 ended July 18, 1997). 
14. Tex. Gov't Code § 311.014(a) ("In computing a period of days, the first day is excluded
and the last day is included."); id. § 311.014(c) ("If a number of months is to be computed by counting
the months from a particular day, the period ends on the same numerical day in the concluding month as
the day of the month from which the computation is begun, unless there are not that many days in the
concluding month, in which case the period ends on the last day of that month."); see also id. §
311.005(12) (a "year" means "12 consecutive months").
15. 599 S.W.2d 113 (Tex. Civ. App.-Dallas 1980, writ ref'd n.r.e.) (police officer's three
month "probationary period" began on the first day he started work-May 2
nd and therefore expired on
August 1st, not August 2nd).
16. Id. at 115 (citing Moore v. Industrial Life Insurance Co., 549 S.W.2d 47, 48 (Tex. Civ.
App.-Dallas 1977, writ ref'd n. r. e.); Acme Life Insurance Co. v. White, 99 S.W.2d 1059, 1060
(Tex. Civ. App.-Eastland 1936, writ dism'd w. o. j.)).
17. The State argues that "[t]he period of community supervision should be calculated in the
same way as a statute of limitations rather than a sentence." State's Brief at 4. But the State fails to
explain why the period of community supervision during which the defendant suffers restrictions upon
his freedom is more like a statute of limitations (the time period within which the State must do a
specified act of filing a criminal complaint or indictment) than it is like a sentence of imprisonment in
which the person suffers restrictions upon his freedom. 
18. See Scott v. State, 634 S.W.2d 853, 854-55 (Tex. Crim. App. 1985) (the calculation of the
120 day time period during which the State must show that it was ready for trial was controlled by the
Code Construction Act, former article 5429b-2, § 2.04(a) and (b)).
19. See Teresa D. Caskey, Oh, What a Difference a Day Makes: Mattson v. U.S. West
Communication, Inc., 62 UMKC L. Rev. 227, 230 (1993) (stating that the rationale for the common
law rule of excluding the first day of a statute of limitations time period and including the last day was
"to give potential litigants the full force and effect of the time allowed under any law, the first day must
be excluded from the calculation. Otherwise, any portion, no matter how small, of the first day would
constitute one whole day.").
20. 86 S.W.3d 231 (Tex. Crim. App. 2002).
21. Id. at 232.
22. 543 S.W.2d 650 (Tex. Crim. App. 1976).
23. Id. at 651.
24. 993 S.W.2d 660 (Tex. Crim. App. 1999).
25. Id. at 662.
26. Compare State v. Aguilera, 165 S.W.3d 695, 698 (Tex. Crim. App. 2005) (trial court
retains power to modify a sentence before the end of court on the same day as the sentence is originally
imposed as long as the defendant has not yet started to serve his sentence). 
27. McGaughy v. Richardson, 599 S.W.2d 113, 115 (Tex. Civ. App.-Dallas 1980, writ ref'd
n.r.e.).
28. Nesbit, 175 S.W.3d at 567-68; see also Pino v. State, 189 S.W.3d 911, 914-15 (Tex.
App.-Texarkana 2006, no pet.) (following Nesbit and holding that defendant's deferred community
supervision period expired on the day before the anniversary date).
29. Not only did the judgment explicitly state that appellant's community supervision began on
April 29, 1994, but the conditions of his community supervision required him to participate in the
Electronic Monitoring Program beginning that very day. It is undisputed that this condition of
community supervision restricted appellant's freedom to some extent on April 29, 1994.