JEFFERSON STANDARD LIFE INS. CO. v. MYERS.   (No. 583–4405.)

(Commission of Appeals of Texas, Section B. May 19, 1926.)

1. Insurance ☞349(1)—Anniversary of policy as respects computation of period for payment of premiums held date of its delivery to insured.

Where life policy did not become effective until delivered to insured during good health and upon payment of first annual premium, anniversary of policy as respects computation of period for payment of premiums *held* date of its delivery and effectiveness, and not date contained in policy.

2. Words and phrases.

"Act," legally speaking, involves exercise of will, signifies something done voluntarily, and necessarily implies intention (citing Words and Phrases, Second Series, "Act").

3. Insurance ☞529—Insured's death at hands of insane person held not from bodily injury "inflicted" by another person, so as to exempt company from liability under double indemnity clause.

Exemption from liability under double indemnity clause for death due to bodily injury "inflicted" by another person *held* only to extend to intentional injuries to insured, and therefore not to shooting by insane person; "inflicted" necessarily implying action which involves exercise of will.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Inflict—Infliction.]

Error to Court of Civil Appeals of Second Supreme Judicial District.

Action by Hazel Hope Myers against the Jefferson Standard Life Insurance Company. Judgment for defendant was reversed by the Court of Civil Appeals (271 S. W. 217), and defendant brings error. Affirmed.

Moses & Rowe and S. C. Rowe, all of Fort Worth, for plaintiff in error.

Stone & Guleke, of Amarillo, for defendant in error.

POWELL, P. J. The nature and result of this litigation are fully stated by the Court of Civil Appeals, in an opinion by Chief Justice Conner. See 271 S. W. 217. Briefly, it was a suit upon a double indemnity life insurance policy in the sum of $3,000 if death resulted from natural causes. If, on the other hand, it was accidental, then it was for $6,000. The insured came to his death as the direct result of the gunshot wound inflicted by an insane woman. The Court of Civil Appeals awarded a judgment for the entire amount sued for, including the double indemnity feature.

There are but three assignments of error in the application. Two of these are based upon the contention that the policy had lapsed at the time the insured died and, for that reason, no recovery could be had. The Court of Civil Appeals has treated this matter ably and correctly, and we shall merely allude very briefly to this contention.

[2] The policy was dated September 7, 1921, but expressly provided that it was not to become effective until delivery during the good health of the insured and upon the payment of the first annual premium. The policy was delivered October 4, 1921, and the first annual premium paid at that time. Therefore, under its own terms, it became effective October 4, 1921, and the policy provided that similar premiums should be payable on each anniversary of such policy. The Court of Civil Appeals held, and we think correctly, that the date of the contract was the date of its effectiveness and that the premiums matured annually thereafter. In other words, the company, in the absence

of a contract to the contrary, has no right to collect a premium for almost a month before the insured has any protection under the policy. The premium is for a year. Every provision of the policy shows this beyond a doubt. Of course, where the insured contracts definitely that the premium shall be payable on a certain date, even though less than a year, we have a different question. Some of the courts uphold such a provision upon the theory that the insured can contract to suit himself and waive his natural rights. But this policy contained no such agreement. As stated by the Court of Civil Appeals, this same contention was raised by this same company unsuccessfully in the recent case of Insurance Co. v. Baker, 260 S. W. 223. The action of the Court of Civil Appeals at Dallas in the latter case, overruling the company's contention, was indirectly approved by our Supreme Court when it refused the writ of error.

From what we have already said, the first two assignments must be overruled. The beneficiary was clearly entitled to collect the $3,000.

[2, 3] There is but one assignment in the application with reference to the double indemnity feature of the policy. That assignment reads as follows:

"The Court of Civil Appeals erred in holding that defendant in error is entitled to the double indemnity provided for by the policy, because, as part of the double indemnity provision of the policy, it is specifically provided that such provision shall not apply 'in case death results from bodily injury inflicted by another person,' but the policy does not provide, as do those in the cases passing upon similar provisions, that same shall not apply in case death results from bodily injury intentionally inflicted by another person."

The double indemnity provision of the policy reads as follows:

"The company will pay the beneficiary in full settlement of all claims hereunder double the face amount of this policy if, during the premium paying period, and before default in the payment of any premium, and before waiver of any premium on account of disability, and before any nonforfeiture provision is in effect, the death of the insured results from bodily injury within ninety days after the occurrence of such injury, provided death results directly and independently of all other causes from bodily injury effected solely through external, violent and accidental means while the insured is sane and sober; except these provisions do not apply if the insured shall engage in military or naval service or any allied branch thereof, in time of war, or in case death results from bodily injury inflicted by another person or by the insured himself, or from engaging in aeronautic or submarine operations, either as a passenger or otherwise, or from any violation of law by the insured, or from a state of war or insurrection, or self-destruction, whether during the first policy year or afterward."

It is conceded by counsel for the insurance company that where one is shot to death by an insane person, the injury is one due to accidental means, and the company is liable if the policy, properly construed, provides that the killing, in order to avoid liability of the company, shall be intentionally done. In other words, we have decision after decision of our courts holding death to be accidental where an insane person kills another and where a sane person unintentionally kills another. It is not necessary to cite these authorities. The Court of Civil Appeals in this case so held, and such holding is not attacked in the application.

But counsel attempt to avoid liability for the double indemnity, in spite of aforesaid admitted rule of law, upon the theory that this death was due to a "bodily injury inflicted by another person." In arguing before our court, counsel for the company frankly admitted that if the word "intentionally" had preceded the word "inflicted" in the clause just quoted, there would have been no lawsuit; that the company would have had no defense to the double indemnity provision of the policy.

So, there is but one question for our determination. That is, were the courts authorized to read into this contract the word "intentionally"? If so, the Court of Civil Appeals correctly decided this question and allowed recovery under this provision of the contract.

In the first place, it must be conceded (Insurance Co. v. Crandal, 120 U. S. 527, 7 S. Ct. 685, 30 L. Ed. 740) that when one "inflicts" injury, he "acts." He must do something. In Webster's New International Dictionary, we are told this word comes from the Latin words meaning "to strike." This dictionary then goes on to say that it means "to give, or produce by striking * * * pain," etc.

Consequently, it seems clear that the words here used are the same in effect as if the provision had exempted the company from liability for double indemnity where the injury resulted from "the act" of another person. If this be true, then it is interesting to see what is involved, legally speaking, in the meaning of the word "act." It seems clear that, in the absence of language expressing a contrary meaning, an "act" involves an exercise of the will. It signifies something done voluntarily. It necessarily implies intention. We find these statements abundantly sustained by the text-writers and decisions of our courts. For instance, the following:

Webster's New International Dictionary defines "act" as follows:

"Jurisprudence is concerned only with outward acts. * * * The essential elements of such acts are three, viz., an exertion of the will, an accompanying state of consciousness, a manifestation of the will."

We are told in Words and Phrases that—

"An act signifies something done voluntarily by a person. An act is the result of the exercise of the will."

The same author tells us that, as used in an insurance policy restricting liability in ·case of death of insured by his own "act," the word implies an "intention."

Black's Law Dictionary, 1891 Edition, p. 20, defines "act" as follows:

"In its most general sense this noun signifies something done voluntarily by a person, the exercise of an individual power; and an effect pro- ·duced in the external world by exercise of the power of a person objectively, prompted by intention and proximately caused by a motion of the will."

1 Corpus Juris, p. 912, defines "act" as follows:

"In a more technical sense the word signifies something done voluntarily by a person, or in other words, the result of exercise of the will."

In Chapman v. Republic Life Insurance Co., 5 Fed. Cas. No. 2606, 6 Biss. 238, the court said:

"The word 'act' necessarily implies intention. * * *"

In the case of Randle v. Birmingham Railway Light & Power Co., 169 Ala. 314, 53 So. 918, the Supreme Court of Alabama says:

An act "denotes affirmative action or performance, and an expression of will or purpose. * * *"

Words and Phrases cite this last case in their splendid work.

In writing contracts, words are to be construed in their legal sense. The practically uniform holding that an "act" done involves intention, unless the contrary is specified, is particularly true of insurance contracts. For instance, in the case of Mutual Life Insurance Co. v. Terry, 82 U. S. (15 Wall.) 580, 21 L. Ed. 236, the insured died "by his own hand." He drank poison therefrom. The policy provided that if the insured should "die by his own hand," the company would not be liable. It will be readily observed that, physically speaking, he did die by his own hand. This cannot be questioned. But, mentally speaking, he did not do so. He was insane. The Supreme Court of the United States, with only one dissenting justice, held the company liable in spite of this provision in the contract. The court said the insured must intentionally take his life before the company can escape liability.

This same rule has been applied by the same great court to a purely accident policy. In the case of Accident Insurance Company of North America v. Crandal, 120 U. S. 527, 7 S. Ct. 685, 30 L. Ed. 740, the insured had an accident policy only. The insured, while temporarily insane, hanged himself with a pair of suspenders attached to a doorknob in his bedroom. The company denied liability on the ground that, under the terms of its policy, it was not liable where the death was by "suicide or self-inflicted injuries." But the Supreme Court, in a unanimous opinion, speaking through Justice Gray, held the company liable. He said:

"The single question to be decided therefore is whether a · policy of insurance against 'bodily injuries, effected through external, accidental and violent means,' and occasioning death or complete disability to do business, and providing that 'this insurance shall not extend to death or disability which may have been caused wholly or in part by bodily infirmities or disease, or by suicide, or self-inflicted injuries,' covers a death by hanging one's self while insane.

"The decisions upon the effect of a policy of life insurance, which provides that it shall be void if the assured 'shall die by suicide,' or 'shall die by his own hand,' go far towards determining this question. This court, on full consideration of the conflicting authorities upon that subject, has repeatedly and uniformly held that such a provision, not containing the words 'sane or insane,' does not include a self-killing by an insane person, whether his unsoundness of mind is such as to prevent him from understanding the physical nature and consequences of his act, or only such as to prevent him, while foreseeing and premeditating its physical consequences, from understanding its moral nature and aspect. Life Ins. Co. v. Terry, 82 U. S. 15 (Wall.) 580 (21 [L. Ed.] 236) ; Bigelow v. Berkshire L. Ins. Co., 93 U. S. 284 (23 [L. Ed.] 918; Insurance Co. v. Rodel, 95 U. S. 232 (24 [L. Ed.] 433) ; Manhattan L. Ins. Co. v. Broughton, 109 U. S. 121 ([3 S. Ct. 99] 27 [L. Ed.] 878). In the last case, which was one in which the assured hanged himself while insane, the court, repeating the words used by Mr. Justice Nelson, when Chief Justice of New York, said that 'Self destruction by a fellow being bereft of reason can with no more propriety be ascribed to the act of his own hand than to the deadly instrument that may have been used by him for the purpose,' and 'was no more his act, in the sense of the law, than if he had been impelled by irresistible physical force.' 109 U. S. 132 ([3 S. Ct. 105] 27 [L. Ed.] 882) ; Breasted v. Farmers' Loan &·T. Co., 4 Hill, 73. In a like case, Vice-Chancellor Wood (since Lord Chancellor Hatherley) observed that the deceased was 'subject to that which is really just as much an accident as if he had fallen from the top of a house.' Horn v. Anglo-Australian Ins. Co., 30 L. J. (N. S.) Ch. 511; s. c. 7 Jur. (N. S.) 673. And in another case, Chief Justice Appleton said that 'The insane suicide no more dies by his own hand than the suicide by mistake or accident,' and that, under such a policy, 'death by the hands of the insured, whether by accident, mistake, or in a fit of insanity, is to be governed by one and the same rule.' Eastabrook v. Union Ins. Co., 54 Me. 224, 227, 229 [89 Am. Dec. 743].

"Many of the cases cited for the plaintiff in error are inconsistent with the settled law of this court as shown by the decisions above mentioned.

"In this state of the law, there can be no doubt that the assured did not die 'by suicide,' within the meaning of this policy; and the same reasons are conclusive against holding that he

died by 'self-inflicted injuries.' If 'self-killing,' 'suicide,' 'dying by his own hand,' cannot be predicated of an insane person, no more can 'self-inflicted injuries'; for in either case it is not his act."

It is unnecessary to pursue further this line of authority. Most of the states, including Texas, follow this rule. It is sound in our judgment.

Under aforesaid authorities, if the insured in the case at bar had suicided while insane, he would have been entitled to recover. We can perceive no reason to apply a different rule where he is killed by an insane person. In either event, the death is caused by the act of an insane person, and is not an "act" in contemplation of law.

It would deprive practically every policy holder in this company of his double indemnity insurance if we should construe this policy as counsel insist it be construed. The contention is that there is no liability for double indemnity where the insured is killed by another person, whether it is done intentionally or unintentionally, sane or insane. In other words, if you are killed and death is due to an act of a human being, you cannot recover. It is very rare that an accident is disconnected from the act of some other person. If the company is correct, then automobile collisions, crossing wrecks on railroads, and hundreds of other accidents which readily suggest themselves, are outside the policy protection. If a workman, on top of a building, threw a brick off and it fell on a passerby and killed him, the deceased could not recover. And this, too, regardless of how innocent the thrower of the brick may have been. We dislike to so construe a policy provision as to render it practically worthless to most of the policy holders. All counsel in the case, and the Court of Civil Appeals, say that they have found no case exactly in point with the contract now under consideration. Neither have we. But we are unwilling to blaze the way by establishing a rule which would do much violence to the rights of all policy holders and which would overturn practically all the courts in their legal definition of an "act" or "injuries inflicted." If the company had inserted in this policy language which clearly effected the purpose for which it now contends, the policy holders would have had no particular cause to complain. But it left the meaning open and in doubt. Construction is necessary. Under such circumstances, all the courts hold that contracts of this kind must be construed most favorably for the insured. Under that rule, we are of the view that, before this company can escape liability under the double indemnity clause here involved, it must appear that the injury inflicted by another person was intentionally inflicted. The insane person shooting Myers

did not exercise any intention. Insane people have no purpose in mind. Their mind is gone.

The construction we have given this policy provision is reasonable and protects the company where a person intentionally injures the insured. When Myers took this policy, he knew it had that effect under all the decisions of the courts. He could not reasonably have known his protection was further impaired. The life insurance companies, after the decisions referred to, changed their policies against suicide and denied liability, whether the insured was "sane or insane," when he took his own life. Clear language should be used, so that those taking policies may know exactly what they purchase, if the company intends to overrule the legal meaning which the courts have always given to the words they use.

We recommend that the judgment of the Court of Civil Appeals be affirmed.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.