**Mrs. Bonnie C. FARR et al., Plaintiffs,**

**v.**

**SUN LIFE ASSURANCE COMPANY OF CANADA, Defendant.**

**No. DC 71–10–K.**

United States District Court,
N. D. Mississippi,
Delta Division.

June 7, 1972.

---

Charles C. Jacobs, Jr., Cleveland, Miss., for plaintiffs.

Alfred A. Levingston, Cleveland, Miss., for defendant.

## MEMORANDUM OPINION ON MOTION FOR SUMMARY JUDGMENT

KEADY, Chief Judge.

In this case, Mrs. Bonnie C. Farr, individually and as administratrix of the estate of William Emmett Farr, deceased, and others, herein called plaintiffs, sue Sun Life Assurance Company of Canada, herein called defendant, for $12,859.22, allegedly due as death benefits on a life insurance policy issued by defendant.

Both the plaintiffs and defendant have moved the court for summary judgment in their respective favor, and agree that all essential facts are without dispute, making proper action by way of summary judgment. Upon a narrowly drawn issue, judgment should be granted to plaintiffs if the premium date of the life insurance policy in suit is declared to be May 28, but defendant should have judgment if the premium date is adjudged to be May 1. The reasons for this striking difference in result will appear from uncontradicted facts which follow:

The insurance policy was issued by defendant in 1952 upon the life of William Emmett Farr, then 43 years of age, and a resident of Cleveland, Mississippi. The insurance application was placed by Bolivar Tractor Company, a Cleveland-based business concern of which Farr was president, co-owner and stockholder; and the policy named Bolivar Tractor Company as beneficiary. The insurance application was taken on April 30, 1952, at which time the Bolivar Tractor Company paid to defendant's agent the first year's premium of $679.25. Accompanying the executed application was the report of a medical examination of Mr. Farr made by a local physician at Cleveland.

Concurrently with the execution of the application and tender of the first year's premium, defendant executed and delivered to Bolivar Tractor Company an interim receipt providing as follows: "In consideration of the above payment and agreement to pay and by virtue of the representations contained in said applications, including Parts I and II thereof, and provided the said life on the date of this receipt and on the date of Part II of the application is a risk under which the underwriting practice of the head office of the company would be approved for insurance without any further inquiry by the company as to insurability, the said life is hereby insured for a period not exceeding thirty days from this date on the terms of the policy to be offered by the company. Should the underwriting practice of the company require any such further inquiry as to insurability no insurance shall go into effect hereunder unless and until the poli-

cy is issued by the company. If the application is declined, the consideration herein acknowledged shall be returned." The application was transmitted to defendant, which had its home office in Montreal, Canada.

The face amount of the insurance policy was $12,500.00 with double protection for a certain period of time not material to this case.

On May 6, a medical examining officer of defendant at Montreal determined that another blood pressure reading should be obtained; the next day, May 7, a wire was sent by defendant to its Memphis branch office directing that Farr submit another blood pressure reading and urine specimen. The local physician at Cleveland arranged for these tests, which were carried out on May 12. After these readings were checked and resubmitted, defendant's medical officer at Montreal approved the risk on May 20. Two days later, on May 22, the Memphis branch office was notified by wire that the Farr application was approved. On May 28 defendant signed the policy in suit at Montreal, dating the policy May 28, 1952, and the policy was shortly thereafter delivered to Bolivar Tractor Company.

The policy contained the following pertinent provisions:

"This policy is issued in consideration of the application therefor and of the yearly premium of Six Hundred and Seventy-nine 25/100 Dollars to be due and payable to the Company on the first day of May 1952 and thereafter during the lifetime of the life assured on the first day of May in every year until, but not including, the date of termination of the Double Protection Period, and of a premium of Four Hundred and Forty-four 75/100 Dollars to be due and payable to the Company on the same day in every year thereafter, including the date of termination of the Double Protection Period, until, but not including, the policy anniversary on which the assurance age of the life assured at nearest birthday is 85 years or until the prior death

of the life assured." (page 1 of policy)

. . .

"The payment of a premium will not maintain the policy in force beyond the end of the period covered by such premium except as otherwise expressly provided by the terms of the policy." (page 2 of policy)

. . .

"The policy anniversary is the anniversary of the date on which the first premium is due as specified on the first page hereof." (page 3 of policy)

. . .

"A policy year is any period of twelve months commencing either on the date on which the first premium is due as specified on the first page hereof or on any policy anniversary and ending on the next following policy anniversary." (page 3 of policy)

. . .

"AUTOMATIC EXTENDED TERM ASSURANCE. If a premium on the policy is not paid before the expiration of the grace period allowed for its payment and if on the due date of such premium a cash value is provided for in the Nonforfeiture Values provision, the assurance under the policy will be automatically extended as paid-up term assurance *from the due date of such premium*. The amount of such term assurance will be equal to the sum assured increased by the amount of any existing dividend credits but decreased by any existing Advances and by any interest accrued thereon . . . ." (page 5 of policy)

Subsequent annual premiums paid on May 11, 1953 and May 10, 1954 continued the policy in effect on an annual basis until May 1955, when, by mutual consent, the premium was changed to payment on a quarterly basis, or to May, August, November, and February. There is no dispute about the total amount of money paid as premiums, or that the policy in 1958 lapsed for non-payment of premiums and was properly placed upon automatic extended term insurance. In other words, at time of the

admitted lapse, the cash value of the policy and dividends thereon were calculated in accordance with the policy and placed on an extended term basis providing an agreed amount of paid-up insurance for a definite period of time. Furthermore, the parties have agreed that this extended term period was eleven years three hundred sixteen days, and if death had occurred within that period, the policy would pay $12,859.22.

Mr. Farr, whose life was insured under the policy, died September 26, 1970. Bolivar Tractor Company, the owner and beneficiary of the policy, was at that time a Mississippi corporation that had been dissolved and all of its assets had descended to Mrs. Farr either individually as a corporate stockholder or as administratrix of her husband's estate. Hence, there is no question but that if a right of the company exists, the cause of action is fully vested in the plaintiffs who bring this action.

It is defendant's contention that the extended term period began to run November 1, 1958, the date on which the quarterly premium was due and was not paid (within the thirty-day grace period) which caused the policy to lapse as of that date, and thus calculated the extended term period expired September 12, 1970, which was fourteen days prior to Farr's death, and left the policy without value. In opposition, the plaintiffs contend that the extended term period commenced to run November 28, 1958, asserting that to be the correct due date of the quarterly premium, the nonpayment of which caused the policy to lapse, and, thus computed, the extended term would not expire until October 10, 1970, and hence at the date of Farr's death, the paid-up insurance was still in effect.

The Court adopts as its findings all of the facts stipulated by the parties and admitted by the pleadings and incorporates them herein by reference. The issue raised for decision is solely one of law.

■ In determining the rights of the parties, the Court is obliged to follow Mississippi law since this is a diversity case and the insurance contract was made in that state. But, as counsel acknowledge, there is no state decision either directly in point or analogous that furnishes a guide for us. Consequently the Court is free to examine the general case law as it exists throughout the country and which has been ably discussed in the briefs.

The Court concludes that the position of the plaintiffs is not well taken, and it will briefly discuss each of plaintiffs' contentions.

■ The first argument advanced by plaintiffs is that the insurance policy contains conflicting provisions which give rise to ambiguity, and these the Court should resolve in favor of the insured in accordance with well-known rules of construction. This Court has no quarrel with that rule of law and would be quick to apply it here if it could be fairly said that there is ambiguity or doubt as to what the several provisions of this policy mean. On the other hand, the plain and unambiguous provisions of a policy must be enforced as they appear.

The policy clearly provides that it is issued in consideration of the application therefor, meaning the documents attached to the policy, and upon a yearly premium of $679.25 to be due and payable to the company *on the 1st of May,* 1952, and thereafter during the life of the insured *on the 1st day of May* every year until, but not including, the date of the termination of the double protection period, etc. The policy anniversary and policy year are defined with reference to the date as so specified.

Although the policy was signed and sealed at Montreal as of May 28, 1952, there is a clear-cut provision that the yearly premium shall become due on the fixed date of May 1, 1952, and on May 1 of each year thereafter during the lifetime of the insured. That the policy was dated May 28, 1952, indicates no ambiguity or doubt as to the establishment of the premium date.

In virtually all of the cases to which plaintiffs' counsel refer, the Court is impressed with the fact that there existed contradictory provisions in that while fixing a prior premium date, the policy also provided it would not be effective until subsequently delivered, or unless the assured be alive on the date of delivery. It is significant that defendant's policy had no such provision. On the contrary, this policy as written is absolutely without any limitation upon the liability which the company accepted as of May 1, 1952. The change to quarterly premiums made the payments due May 1, August 1, November 1, and February 1, and not to a different day in any of the quarterly months.

There is no prohibition against an insurer accepting liability on a date anterior to the date of the issuance of its policy, and here defendant undertook to do exactly that. While this may appear an unusual event, the mystery is explained by the terms of the interim receipt and when we consider what took place during thirty days prior to issuance of the policy. These matters will be discussed at a later point in the Court's ruling. But the court is unable to see any ambiguity whatever in the several policy provisions or the subsequent agreement of the parties concerning the establishment of the premium due date.

■■ The general rule is that an insurance company has the right, so long as it acts reasonably, to select the premium date of the policy, including dating it prior to the issue date, and the policy provision as to the premium due date is given controlling effect. There is good reason for the premium date to be plainly spelled out in the insurance contract since it controls the rights and liabilities of both parties in several important respects. Thus, when the policy specifies a fixed premium date, without conflicting or contradictory provisions, the courts will be governed by the date plainly specified.

■■ In predating a policy within reasonable limits, the insurer is not limited in doing so only where it may give the insured a lower age premium. A reduced premium is not the only benefit conferred by predating a policy. As other courts have said, when an insured receives earlier dating on his policy, this operates to his advantage with respect to the cash and loan values and the incontestable and suicide clauses, highly material matters in many cases. Such contractual provisions, as a result of predating, constitute a valuable consideration to the insured, and support the policy provision in that regard. As previously stated, the insurer, as the general rule, has the right to specify the premium date in issuing a policy, and it is important to the parties and the validity of the insurance contract that this date be plainly spelled out in the policy, and not subject to variance by interpretation or other extrinsic considerations.

■ In this particular case, counsel for plaintiffs suggests that since the policyholder did not get the benefit of a reduced premium, or anything else of value, it was arbitrary for defendant to predate the policy by twenty-eight days. This Court is unable to accept that as a fair or proper characterization of what happened. It is perfectly clear that all parties—Bolivar Tractor Company, Farr and the defendant—made a clear agreement on April 30, 1952, with the issuance and delivery of the interim binder. By that binder, the parties agreed there would be insurance coverage for the next, immediate thirty days, subject to a single condition. The defendant reserved the right to be relieved of the risk if it undertook further inquiry regarding insurability, which was a reasonable term of the interim receipt. As of the date its agent received the first year's premium from Bolivar Tractor Company, the defendant was itself without any medical knowledge whatever regarding Farr's insurability since the medical report and application that accompanied the check had not been sub-

mitted to the home office. Under these circumstances it was understandable that defendant contracted to provide insurance conditionally for thirty days, during which defendant would have the opportunity to resolve the risk. If satisfied as to insurability, defendant was required to issue the policy as applied for; but if defendant was not so satisfied the premium would be returned. This was the clear and definite agreement of the parties.

That being true, the Court is of the opinion that it is incorrect to say that during the thirty-day period the insured received no benefit for the premium paid on April 30. It seems more reasonable to conclude that unless and until defendant made inquiry concerning Farr's insurability the company was on the risk by the literal words of the receipt. The defendant was not compelled to make such inquiry, and if made, was relieved only during the period of its inquiry. It may very well be that the defendant would have been released of the risk had Farr's death occurred during the period of inquiry, i. e. between May 7, 1952 and May 20, 1952. But upon defendant's approval of insurability on May 20, 1952, the sole condition of the interim binder was met. As of that time, defendant, then having been satisfied as to Farr's insurability, was unconditionally obligated to issue its policy as applied for on April 30, 1952. When defendant predated the policy, it was not only in accordance with the unmistakable understanding of the parties but also the policy superseded and took the place of the interim binder.

The evidence shows that this insurance company never dated a policy after the 27th of the month, and for that reason, the policy was not dated April 30, but May 1. The difference of one day is of no consequence in this case. What is material is that when defendant selected the date of May 1, 1952, it was not acting arbitrarily or without reason, but with reference to the initial agreement made with Bolivar Tractor Company and

Mr. Farr. The only contingency it had had for getting off the risk had been satisfied in an inquiry begun May 7 and completed May 20. Thereafter it no longer had any right except to proceed with the issue of the policy exactly as applied for. In the opinion of the Court, this was a reasonable and proper arrangement made to give interim, on-the-spot coverage to Farr and still leave an opportunity to the insurer, if such was desired, to satisfy itself as to Farr's insurability.

Another rule of law in favor of defendant is that when these parties agreed to change the premium due date from an annual to a quarterly payment date, they accepted the 1st of the month as the due date. Premiums were paid over the years with respect to the first day of the month or within a grace period referable to the 1st day of the month, and not a date of the 28th of May, or the 28th of any quarterly month, or yet another different day of the month. Thus the parties recognized and accepted the premium date. Neither Bolivar Tractor Company nor Mr. Farr made any objection to the premium date of May 1, or, after agreeing upon quarterly payments, to a due date falling on the 1st day of the month for each of the quarterly periods.

Plaintiffs do not claim, nor is there any evidence of, mistake, fraud or accident in the policy provision of May 1, or that any basis exists for policy reformation to change the premium date as established by the policy and the conduct of the parties.

All of this seems so indisputably clear that the Court is required to hold that the extended term period must be calculated as beginning just as the policy provides, i. e. from the due date of the last premium on November 1, 1958. Under the uncontradicted facts, this extended term expired prior to the date of the death of Mr. Farr.

It is regrettable that this leaves plaintiffs without coverage, but under the

rules of law that control courts, the inevitable conclusion is the defendant's motion for summary judgment must be granted. That will be the order of the Court.