**LIFE INSURANCE COMPANY OF the SOUTHWEST, Petitioner,**

v.

**Jacquei Mae OVERSTREET, Respondent.**

**No. B–8549.**

Supreme Court of Texas.

June 25, 1980.

Rehearing Denied Sept. 24, 1980.

Brown, Herman, Scott, Dean & Miles, Richard E. Miles and J. Shelby Sharpe, Fort Worth, for petitioner.

Herrick & Waltrip, John W. Herrick, Fort Worth, for respondent.

POPE, Justice.

Plaintiff, Jacquei Mae Overstreet, sued Life Insurance Company of the Southwest to recover $100,000 as the beneficiary of a life insurance policy on the life of her husband, Maxie Overstreet. The trial court and the court of civil appeals have held that the policy was in force at the time of Over-

street's death. 580 S.W.2d 929. The insurer appeals and urges that the policy had lapsed because Overstreet had failed to pay the annual premium either on the due date or within a thirty-one-day grace period. We hold that the policy had lapsed. We accordingly reverse the judgments of the courts below and render judgment that plaintiff take nothing.

Maxie Overstreet, the insured, died on April 24, 1974, at which time he had not paid the 1974 annual premium on the policy. Life Insurance Company says that by the date of death, the policy had lapsed because the premium had fallen due on March 15, 1974, the thirty-one-day grace period had expired on April 15, and the insured's death on April 24 had occurred nine days after the grace period's termination. Jacquei Mae Overstreet says, and the courts below have held, that the premium payment date was April 18 rather than March 15, that nonpayment of the annual premium on April 18 did not end the policy until thirty-one more days, and that Overstreet's death on April 24 was well within the grace period.

The trial court and the majority of the court of civil appeals have held that Maxie Overstreet made his first annual premium payment on April 18, 1972, and that each subsequent annual premium fell due on April 18. That date, which does not appear anywhere in the policy, was determined in this manner:

In February, 1972, Overstreet submitted his application to Life Insurance Company of the Southwest to convert a five-year term life policy to a life insurance policy with endowment at age ninety. The earlier policy provided that it would lapse on March 15, 1972. To effect the conversion of the term policy to the policy at issue, Overstreet, on March 6, 1972, delivered his premium check to insurer. It was returned because of insufficient funds. Overstreet then wrote a second check which was also returned for insufficient funds. His third check cleared the bank on April 18, 1972.

The insurer treated March 15 as the date annual premiums were due and sent notices to Overstreet on that basis. On March 6, 1973, insurer sent a notice to Overstreet advising him that his annual premium was due on March 15. After he failed to make his payment on that date, the insurer, on April 5, sent him another notice advising that the grace period for late payment would expire April 15. Overstreet still made no payment. The insurer, on April 15, sent him a further notice advising that the premium was past due and that the policy had been terminated. The notice offered, however, to reinstate the policy if Overstreet paid the premium within ten days. On April 25, the last day of the ten-day period, Overstreet paid the premium, which was for the 1973 insurance year. That premium payment was the last that Overstreet ever made. He did not pay his 1974 premium, and he died on April 24 of that year.

The holdings below and the contentions of the beneficiary are that the provisions of Overstreet's application for the policy were a part of the policy and that the policy did not become effective and was not in force until it was issued and delivered upon the payment of the full first premium. Because that payment was not made until April 18, 1972, the argument is that each annual premium thereafter became due on that date. The application contained this paragraph:

3. Any insurance approved by the Company for issuance as a result of this application, unless effective prior to policy delivery in the manner specified in the receipt attached hereto, shall be considered in force only when a policy shall have been issued by the Company and said policy manually received and accepted by the Applicant and the full first premium paid thereon, in the case of life insurance, during the good health of the Proposed Insureds . . . .

The policy, however, contains other relevant provisions. We shall now examine them. The first thing that a reader sees upon reading the policy is a plastic window at the top of the first page. Words that were typed and printed at the top of the second page appear through the window.

The information thus disclosed is the name of the insured, the policy number, the name of the owner of the policy, the amount of the insurance, which was $100,000, the insurance plan, and what the policy calls the "Effective Date." Opposite the "Effective Date" are the words, "March 15, 1972."

The next relevant part of the policy is found in the third paragraph on the first page and below the window. It says that the first premium was payable on the "Effective Date," which, as the policy had already stated, was March 15, 1972. The same paragraph states that subsequent premiums would be payable in periodic installments "thereafter." The word, "thereafter," refers to the Effective Date, or March 15, 1972. This third paragraph provides:

The consideration for this Policy is the application therefor and the payment of premiums as herein provided. *The first premium in the amount specified in the Insurance Schedule is payable on the Effective Date* and subsequent premiums are payable in periodic instalments thereafter until premiums have been paid for the period specified in the Insurance Schedule or until the prior death of the Insured. [Emphasis added.]

On the third page, there is a paragraph which requires the insured to pay his premiums annually in advance. A provision of that paragraph says that the premiums "shall fall due on the same day of the month on which the first premium is due," and that the failure to pay the premium when due or within the grace period will end the policy except as it otherwise provides. All premiums were thus due on the day on which the first premium was due. The first premium, as we have seen from the paragraph on the first page, was due on the "Effective Date"; and that date, as the policy stated at the outset, was March 15. This is the paragraph concerning premium payments:

PREMIUM PAYMENTS. Any premium hereon is payable in advance at the Home Office of the Company, or to an authorized agent of the Company, in exchange for the Company's official receipt signed by the President or Secretary and countersigned by the agent. Premiums may be paid in periodic instalments at the instalment rates specified in the Premium Schedule but premiums may be changed to a monthly basis only if the amount of the monthly premium is stated in the Premium Schedule. The payment, of an annual, semi-annual, quarter-annual or monthly premium will maintain this Policy in force for one year, six months, three months or one month, respectively. Such periods will be deemed to expire and the next premium shall fall due on the same day of the month on which the first premium is due. Failure to pay any premium when due or within the period of grace provided shall cause this Policy immediately to become void except as otherwise provided herein.

This court by several earlier decisions has adopted the rule of the majority of jurisdictions in this country. That rule is that a definite statement in the policy of the date on which annual premiums will be *due* is the due date. Such a statement of the due date controls even over a provision stating that a policy will not be in force until it is initially delivered and the first premium is paid during the good health of the insured. *Once the policy comes in force, all of the terms of the policy become operative including its provision about the "Effective Date."* Southland Life Ins. Co. v. Vela, 147 Tex. 478, 217 S.W.2d 660 (1949); Great Southern Life Ins. Co. v. Peddy, 139 Tex. 245, 162 S.W.2d 652 (1942); Kurth v. National Life & Accident Ins. Co., Inc., 79 S.W.2d 338 (Tex.Civ.App.—San Antonio 1935, writ ref'd); 1 Appleman, Insurance Law and Practice § 105 (1965). This court's decision in Peddy, supra, reversed the judgment of the court of civil appeals and rejected the reasoning that there was an inconsistency and ambiguity in a policy which provided that although it would be in force upon its delivery, the premiums would be due at an earlier stated date. Great Southern Life Ins. Co. v. Peddy, 151 S.W.2d 346, 351–52 (Tex.Civ.App.—Beaumont 1941), rev'd, 139 Tex. 245, 162 S.W.2d 652 (1942); 7 Williston on Contracts § 905 (3d ed. 1963); see Annot., 44 A.L.R.2d 472 (1952).

■ The policy before us expressly fixes the Effective Date at March 15, 1972. The policy provides that "The first premium . . . is payable on the Effective Date," that is, on March 15, 1972; that "subsequent premiums are payable in periodic instalments thereafter"; and that "The payment of an annual premium will maintain this Policy in force for one year . . . ." This one-year period, according to the policy, "will be deemed to expire and the next premium shall fall due on the same day of the month on which the first premium is due." In this case, as was also the case in *Vela, Peddy*, and *Kurth, supra*, the premium was not paid on the day it was "due." Although the first premium was not in fact paid on the Effective Date, March 15, it was clearly "due" on that date; it was "payable" then. In *Peddy*, this court wrote:

> The great weight of current decisions sustains the rule that when a policy specifically provides for the payment of premiums, and expressly specifies the date from which the premium period is to be computed, and makes that date the day on which recurring premiums are due and payable, such date will control, irrespective of the date on which the policy is delivered.

162 S.W.2d at 653.

■ By its decision in *Vela, supra*, this court also settled the rule that the contract is enforceable as written notwithstanding the fact that the first premium is paid late, that is, after it is "due" and "payable." This is the rule even though the insured obtains less than a full year's coverage for the first year's premium. The court in *Vela* wrote:

> No public policy is violated by a contract between an insurance company and an insured whereby premiums are to be paid from the effective date of the policy rather than the date of its delivery, even though the effect thereof is to charge a premium for a period when the insured has no protection.

217 S.W.2d at 663.

Stating a definite "Effective Date," as this policy does, is important for reasons expressed in *Vela, Peddy*, and *Kurth, supra*. A definite time is essential to such determinations as the insured's age at the "Effective Date" and the resulting premium rate, cash surrender value, loan value, paid-up insurance benefits, incontestible period, *Acme Life Ins. Co. v. White*, 99 S.W.2d 1059 (Tex.Civ.App.—Eastland 1930, writ ref'd), and grace period.

The premium was due and payable on the effective date. It was paid neither by that date nor within the grace period that followed.

The judgments of the courts below are reversed, and judgment is here rendered that plaintiff take nothing.

Dissenting Opinion by BARROW, J., in which McGEE, CAMPBELL and SPEARS, JJ., join.

BARROW, Justice, dissenting.

I respectfully dissent.

I do not believe that the majority has followed the rule laid down by this Court in *Great Southern Life Ins. Co. v. Peddy*, 139 Tex. 245, 162 S.W.2d 652 (1942), which is the rule in nearly all jurisdictions. In *Peddy* we stated:

> "The great weight of current decisions sustains the rule that when a policy specifically provides for the payment of premiums, and *expressly specifies the date from which the premium period is to be computed*, and makes that date the day on which recurring premiums are due and payable, such date will control, irrespective of the date on which the policy is delivered." (Emphasis Added)

The critical requirement of this rule is that the policy must clearly set forth a *specific* and *certain date* for the payment of future premiums if that date is to be any earlier than the date the policy becomes in force and effect. This critical requirement is also stated in *Southland Life Ins. Co. v. Vela*, 147 Tex. 478, 217 S.W.2d 660 (1949). In *Peddy*, the specific date clearly set out in the contract was November 25. In *Vela*, premiums were expressly payable on the

18th day of September, December, March and June. In *Kurth v. National Life & Accident Ins. Co.*, 79 S.W.2d 338 (Tex.Civ. App.—San Antonio 1935, writ ref'd), the policy expressly provided that the premium was payable on December 10 and on the 10th day of December of each year thereafter.

This critical requirement is illustrated by the holding in *Jefferson Standard Life Ins. Co. v. Myers*, 284 S.W. 216 (Tex.Com.App. 1926, judgment adopted). There the policy was dated September 7, 1921, but expressly provided that it was not to become effective until payment of the first annual premium which was paid on October 4, 1921. The policy provided that the premiums should be payable on each anniversary of such policy. The court held that the premiums were payable on the latter date when the policy became effective. It said:

"In other words, the company, in the absence of a contract to the contrary, has no right to collect a premium for almost a month before the insured has any protection under the policy. The premium is for a year. Every provision of the policy shows this beyond a doubt. Of course, where the insured contracts definitely that the premium shall be payable on a certain date, even though less than a year, we have a different question. Some of the courts uphold such a provision upon the theory that the insured can contract to suit himself and waive his natural rights. But this policy contained no such agreement. . . ."

Here it was undoubtedly contemplated that the policy would become effective on March 15, 1972, but it did not. Under the terms of the insurance contract, the policy in question came into force on April 18, 1972 at which time the insurer received the first annual premium. The contract provides that the payment of an annual premium would maintain this policy in force for one year. It further provides that "[s]uch periods will be deemed to expire and the next premium shall fall due on the same day of the month on which the first premium is due." Under the majority holding, the insured received only eleven months coverage for his annual premium contrary to the express provision of the policy. I cannot agree that there is a clear and definite provision in the policy requiring this result.

The policy does not expressly provide that the annual premiums are payable on March 15 or any other specific date. Rather, on the third page of the policy it is provided that the twelve months (paid for by the annual premium) "will be deemed to expire and the next premium shall fall due on the same day of the month on which the first premium is due." To determine the date the "first premium is due," one must turn back to the first page wherein it is provided that the first premium "is payable on the Effective Date." On the second page, but under a clear plastic window so as to be visible from the first page, there is written:

MARCH 15, 1972     Effective Date

It is noted that the policy provision relative to when the next premium shall fall due not only does not refer to a specific date, but also does not refer to the term "Effective Date."

I do not believe that the three step process the insured is required to undertake under this contract to reach the result mandated by the majority opinion complies with our previous requirement that the policy "expressly specify the date from which the premium period is to be computed." Consequently, it cannot be said that the contract demonstrates a clear agreement by the parties that the annual premiums were to be due and payable on March 15 irrespective of the date that the policy actually comes into force and effect. This date, one of critical importance to both parties, was left uncertain in this case. It is the insurer that is in the position to realize this importance; it is the insurer that is in the position to avoid this uncertainty by properly preparing the contract, and it is the insurer that should bear the loss when the contract is left unclear.

The rule adopted by this Court in *Peddy* in 1942, which is followed by a majority of

other jurisdictions,[1] is clear and easy to follow. Despite this, the policy here does not contain a specific and certain date when the annual premiums are due. Although the insurer undoubtedly conducted the subsequent correspondence with insured on the basis that the annual premium was due each March 15, there is nothing in the record to show that insured accepted or agreed to this date. To the contrary, the second annual premium was paid and accepted by insurer on April 25, 1973.

I would affirm the judgment of the Court of Civil Appeals.

McGEE, CAMPBELL and SPEARS, JJ., join in this dissent.

---

1. *See: Farr v. Sun Life Assurance Co. of Canada*, 351 F.Supp. 299 (D.Miss.), *approved and affirmed*, 469 F.2d 1392 (5th Cir. 1972); *Prudential Insurance Co. v. Romero*, 28 Colo.App. 337, 472 P.2d 772 (1970); *Lentin v. Continental Assur. Co.*, 412 Ill. 158, 105 N.E.2d 735 (1952); *Reid v. Bankers Life Co.*, 148 Neb. 604, 28 N.W.2d 542 (1947); *Kampf v. Franklin Life Ins. Co.*, 33 N.J. 36, 161 A.2d 717 (1960); 14 Appleman, Insurance Law and Practice § 7953; 43 Am.Jur.2d *Insurance* §§ 544 546; Annot., 44 A.L.R.2d 472; *Contra: Duerksen v. Brookings International Life & Cas. Co.*, 84 S.D. 20, 166 N.W.2d 567 (1969).