NO. 07-03-0068-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

FEBRUARY 6, 2004

_____

JEREMY HAWA,

Appellant

v.

METROPOLITAN LIFE INSURANCE COMPANY,

Appellee

_____

FROM THE 136TH DISTRICT COURT OF JEFFERSON COUNTY;

NO. D-167,221; HON. MILTON SHUFFIELD, PRESIDING

_____

***Memorandum Opinion***

_____

Before JOHNSON, C.J., and QUINN and CAMPBELL, JJ.

Jeremy Hawa (Hawa) appeals from a summary judgment denying him relief against Metropolitan Life Insurance Company (Metropolitan). Hawa had sued to recover unearned premiums on a life insurance policy he purchased. Through two issues, he contends that the trial court erred in granting Metropolitan's motion for summary judgment. We affirm.

***Background***

Hawa commenced this lawsuit to recover damages resulting from his purchase of a yearly renewable life insurance policy. He contended that Metropolitan either breached

its contract with him or unjustly enriched itself. It allegedly did so by charging him for coverage when none was in effect.

According to the insurance agreement before us, Metropolitan issued the policy to Hawa on March 18, 2002. The policy date of the insurance agreement differed, however. It was March 21, 2002. The latter represented the date on which the first premium was due. It also established the date from which "[p]olicy years, months and anniversaries [were] all measured." Thus, the policy would "be renewed automatically for successive periods of one year" from March 21st. Also included in the contract was a provision upon which the claims of breached contract and unjust enrichment were founded. It stated that "[t]he Policy will not be in force until the first full premium is paid."

Here, the undisputed evidence of record illustrates that though the initial premium was due on March 21, 2002, Hawa did not pay it until April 2, 2002.[1] So, he had no coverage for the 11-day period between March 21st and April 2nd. And, because he did not and because those 11 days did not extend the anniversary or renewal date of the policy, he sued under the theories mentioned above to recover an amount equal to the purportedly unearned premium.[2]

Metropolitan moved for summary judgment contending that it could disprove, as a matter of law, at least one element of the breached contract claim. So too did it aver that Hawa could not recover under the theory of unjust enrichment because the terms of the

---

[1]The annual premium was $255. However, per the terms of the insurance policy, Hawa was allowed to pay the amount in monthly or quarterly installments. He selected the latter method.

[2]His claim approximated $11.

contract itself addressed the situation. The trial court undoubtedly agreed with Metropolitan since it granted the motion.

## *Argument*

### *Authority*

The standard of review applicable when considering orders granting summary judgment is well known and need not be repeated. We find it sufficient to merely refer the litigants to *Science Spectrum, Inc. v. Martinez*, 941 S.W.2d 910 (Tex. 1997) and *Nixon v. Mr. Property Management Co. Inc.*, 690 S.W.2d 546 (Tex. 1985) for its explanation.

Additionally, since resolution of the dispute before us concerns the interpretation of a contract, it is important to recall several applicable rules regarding the subject. The first mandates that construing an unambiguous contract involves a question of law. *Cross Timbers Oil Co. v. Exxon Corp.*, 22 S.W.3d 24, 26 (Tex. App.--Amarillo 2000, no pet.); *Borders v. KRLB, Inc.*, 727 S.W.2d 357, 359 (Tex. App.--Amarillo 1987, writ ref'd n.r.e.). Thus, we need not defer to any interpretation afforded by the trial court. *Cross Timbers Oil Co. v. Exxon Corp.*, 22 S.W.3d at 26. Second, when interpreting the document, we strive to give effect to the intent of its parties. *Id*. Furthermore, that intent is garnered from the language of the contract itself, which language is considered in its entirety. *Id*. In other words, we peruse the complete document to understand, harmonize, and effectuate all its provisions. *Id.; Questa Energy Corp. v. Vantage Point Energy, Inc.*, 887 S.W.2d 217, 221 (Tex. App.--Amarillo 1994, writ denied). So too must we afford the words contained in the agreement their plain, ordinary, and generally accepted meaning, unless the instrument requires otherwise. *Sun Operating Ltd. Partnership v. Holt*, 984 S.W.2d 277, 285 (Tex.

App.--Amarillo 1998, pet. denied); *Phillips Petroleum Co. v. Gillman*, 593 S.W.2d 152, 154 (Tex. Civ. App.--Amarillo 1980, writ ref'd n.r.e.).

Next, and most importantly, we may not rewrite the agreement to mean something it does not. *Cross Timbers Oil Co. v. Exxon Corp.*, 22 S.W.3d at 26; *Borders v. KRLB, Inc.*, 727 S.W.2d at 359. Authority prohibits us from altering the accord merely because we or one of the parties dislikes its provisions or thinks that something else is needed in it. *HECI Explor. Co. v. Neel*, 982 S.W.2d 881, 888-89 (Tex. 1998); *Cross Timbers Oil Co. v. Exxon Corp.*, 22 S.W.3d at 26. For a court to change the parties' agreement merely because it did not like the accord, or because one of the parties subsequently found it distasteful, would be to undermine not only the sanctity afforded contracts but also the expectations of those who created and relied upon it. *Cross Timbers Oil Co. v. Exxon Corp.*, 22 S.W.3d at 26-27.

Finally, that the contract is one of insurance does not allow us to deviate from the foregoing rules. Policies of insurance are contracts. *Hernandez v. Gulf Group Lloyds*, 875 S.W.2d 691, 692 (Tex. 1994). So, the terms contained in them, like those in every contract, not only represent the agreement between its parties, *see Ruiz v. Government Empl. Ins. Co.*, 4 S.W.3d 838, 841 (Tex. App.--El Paso 1999, no pet.) (stating that an insurance policy is a contract entered into between the parties whereby each party becomes bound by the terms of the agreement), but also should be enforced as written.          *Application of Authority*

Here, the terms of the policy to which the parties agreed were that: 1) Hawa would pay a specific premium for the insurance coverage; 2) the first premium was due on March 21, 2002; 3) until the first payment in the specified amount was paid, the policy would not be in force; and 4) the policy would renew on the anniversary date or one year from March

4

21, 2003. Nothing is or was expressly said about providing 365 days of coverage during the first term of the policy. Nothing was said about starting the annual renewal period from the day on which the first premium was paid; indeed, the parties expressly agreed otherwise given the provision stating that the policy would renew one year from March 21, 2002. Nor did the parties in any way agree to prorate the first premium due if it were paid late. Rather, Hawa expressly agreed not only that he would pay a specific premium by March 21, 2002, for a policy of insurance that would automatically renew on March 21, 2003, but also that he would have no coverage until the first premium was paid. Given these terms, affording them their plain meaning, and construing them in the context provided for in the policy, we cannot but read them as evincing an intent to allow Metropolitan to receive the same specified premium for the first year of coverage irrespective of when coverage actually becomes effective. In other words, the insured (or Hawa in this case) expressly agreed that for the first year of the policy he would pay the full premium to secure coverage despite the possibility that the actual period of coverage could shrink due to his delay in paying the same premium. Thus, it did not matter whether the entire premium was earned since the insured nonetheless agreed to pay it.

Moreover, whether Hawa encountered the supposed injustice about which he complains (*i.e.* having to pay the full premium though he may receive less than a full year's coverage) was actually dependent upon his own conduct. If he paid the premium when it was due, *i.e.* March 21, 2002, he would have received a full year's coverage. If he did not, then he would receive less than a full year's coverage. So, his own delay, if any, in timely complying with the terms of the contract determined the extent of coverage he would receive in exchange for the unalterable premium he agreed to pay. Moreover, had he

5

thought this outcome unacceptable, the policy itself afforded him relief. Included in it was another provision granting him "10 days after [he] received [the] Policy . . . to review it." And, within "those 10 days," he was entitled to "return the Policy . . . for any reason . . . ." And, if he did so, "any premiums [he] paid [would have] then [been] refunded . . . and the Policy . . . cancelled from the start." Yet, this means of relief was not pursued by Hawa despite the clear meaning of the policy's terms.

Furthermore, the outcome derived here comports with Supreme Court precedent. For instance, in *Life Ins. Co v. Overstreet*, 603 S.W.2d 780 (Tex. 1980), the court held that an insurance contract is enforceable as written notwithstanding the fact that the first premium may be paid late, that is, after it is "'due' and 'payable.'" *Id.* at 783. Additionally, when the policy designates an annual renewal or anniversary date, delay in paying the premium will not extend that date, even if it results in "the insured obtain[ing] less than a full year's coverage for the first year's premium." *Id.* That is not only what the contract provided for but also what occurred here. So, as a matter of law, there was no breached contract.

Finally, because the contract addressed the dispute at bar, Hawa could not invoke the equitable theory of quantum meruit to obtain recovery. *See Iron Mountain Bison Ranch, Inc. v. Easley Trailer Manufacturing, Inc.,* 42 S.W.3d 149, 160 (Tex. App.--Amarillo 2000, no pet.) (holding that when a contract governs the question, one cannot invoke the equitable theory of quantum meruit). So, as contended by Metropolitan below, it proved, as a matter of law, its entitlement to summary judgment.

We overrule both issues asserted by Hawa and affirm the summary judgment.

6